Sylvia Arnold, Appellant, v. Robert M. Arnold,
Appellee.

Gen. No. 43,969.

Opinion filed November 13, 1947. Rehearing denied December 12, 1947. Released for publication December 13, 1947.

EHRLICH & COHN, of Chicago, for appellant; AARON H. COHN, of Chicago, of counsel.

RICHARD H. DEVINE, of Chicago, for appellee.

MR. JUSTICE SCANLAN delivered the opinion of the court.

On December 20, 1930, Sylvia Arnold filed her complaint for divorce from her husband, Robert M. Arnold, in which she charged him with extreme and repeated cruelty. A decree of divorce was entered February 21, *1931*, which found that defendant had been guilty of the charge, and the custody of their child

was awarded to plaintiff. The decree provided, *inter alia,* that defendant pay plaintiff $175 per month as and for her alimony and support, and also pay for the support of the child "the sum of $10.00 per week during such time as the child remains with the mother." On July 9, *1945,* plaintiff filed a petition which sets up the decree and alleges that defendant had failed to comply with its provisions as to alimony and support of the child, that he is in arrears in excess of $12,000, and prays for a rule upon defendant to show cause why he should not be punished for a wilful failure to comply with the decree. Defendant subsequently paid the arrears in full and that matter is not involved in the instant appeal. The petition further alleges that defendant has engaged in business as Arnold Engineering Company and "has been in receipt of a tremendous income from his business and other sources; that he is engaged in the completion of large war contracts for the United States Government"; that because defendant was in arrears in the payment of alimony plaintiff was forced to seek employment; that she has lost considerable weight, is run down and nervous, and has been advised by her physician to quit work in order to regain her health; that she is entitled to a very substantial increase in alimony in accordance with the present ability of defendant and the station in life to which she is entitled as his divorced wife; "that defendant remarried a second time; that his second wife died; and that he is now again married; that he has a beautiful and extensive estate at Lake Geneva, Wisconsin, where he maintains an elaborate establishment and lives a life of luxury with his present wife whose rights are inferior to those of your petitioner." The petition prays for attorneys' fees and for an increase in alimony. The petition was referred to a master, who filed a report and a supplemental report. In the report the master recommended that defendant pay plaintiff the sum of $400 per month

for alimony, but after hearing further testimony touching the income of defendant he recommended, in the supplemental report, that the decree be modified by ordering defendant to pay plaintiff $9,000 per year. The matter then came on to be heard before the chancellor and at the conclusion of the hearing the following opinion was rendered:

"From the findings of the Master and the evidence accompanying said Reports, certain material facts appear, as follows:

"When the decree of divorce was entered the plaintiff, then twenty-six years of age, was unemployed. At that time defendant was employed as chief engineer for the United Air Cleaners at a salary of seventy-five hundred dollars annually. Commencing three months later, his salary was ten thousand dollars a year for the next six months. Thereafter he was employed elsewhere at an annual salary of twelve thousand dollars. Thereafter he had a retainer with a manufacturing company at one hundred and fifty dollars a month for about two years. Thereafter he was with another company for a year and a half, starting at five thousand dollars per annum and advancing to seventy-five hundred dollars per annum. In July, 1935, he started his own business, the Arnold Engineering Company. He had an idea for permanent magnetism in the radio business which he thereupon developed successfully. His business became self-supporting in 1938 or 1939. By 1940 he had made a million dollars plus what he had taken out of his business.

"After the filing of plaintiff's petition herein, defendant sold his interest in the Arnold Engineering Company for twenty-five thousand shares of stock in the Allegheny Ludlum Corporation of the value of one million and fifty thousand dollars and he became employed by the Allegheny Ludlum Corporation, at a salary of thirty thousand dollars per year. The cur-

rent dividend rate on the Allegheny Ludlum Corporation stock will produce during 1946, a dividend payable to the defendant in the sum of forty thousand dollars. Thus the defendant anticipates total income for 1946 of seventy thousand dollars.

"At the time of the entry of the decree in 1931, plaintiff was not required by law to pay income tax to the United States on alimony received from the defendant. She is now required to pay such tax. The defendant is entitled to deduct alimony payments in computing his income tax.

". . .

"Pending the hearings on plaintiff's petition, all arrearages were settled and that matter is not now before the Court. All questions in regard to child support have also been settled between the parties and are not now before the Court.

". . . .

"In support of the recommended increase of permanent alimony from one hundred and seventy-five dollars per month to nine thousand dollars per year, plaintiff's counsel make four contentions.

"(1.) A substantial change in either the divorced wife's needs or her husband's income, justifies an increase in permanent alimony. It therefore follows that an increase in the divorced husband's assets and income, entitles the plaintiff to live on a higher scale than heretofore.

"(2.) A change in the United States income tax laws, imposing upon the plaintiff an obligation to pay a tax on alimony received by her, justifies this court in increasing her alimony payments.

"(3.) The diminished purchasing power of the dollar since 1931, justifies the court in increasing her alimony payments.

"(4.) Plaintiff's earning ability has been impaired by ill health and she is fifteen years older than when the decree was entered,—which are facts justifying an increase in such payments.

"In disposing first of the last mentioned point, it should be borne in mind that plaintiff was not employed at the time the decree was entered, and she is under no obligation now to supplement defendant's payments to her by seeking employment. The court considers the full obligation of supporting the plaintiff to still rest upon the defendant.

"The first point involves a question which has not been directly passed upon by any reviewing court in Illinois, nor, so far as a brief filed by the attorneys herein, reveals, by any court in the United States. The nature of permanent alimony has been discussed in various court decisions and the language used in those cases must serve as a guide to this court in passing now upon the question under consideration. Section 18 of the Divorce Act [Ill. Rev. Stat. 1945, ch. 40, par. 19; Jones Ill. Stats. Ann. 109.186] provides in part, as follows: [Here follow certain parts of Sec. 18.]

". . . However, in this case, plaintiff's first contention is based upon the theory that the amount of alimony to which she is entitled should now be based upon a station in life measured by defendant's present wealth and earning capacity, rather than upon their station in life when the divorce decree was entered in 1931 . . ."

After reviewing certain cases cited by the parties the opinion proceeds:

"In the case at bar, the plaintiff chose to sue the defendant for divorce, rather than for separate maintenance. If she had procured a separate maintenance decree, the marriage relation would not have been terminated and she would still be the wife of the defendant, as is the plaintiff in the case of *Hoover v. Hoover,* 307 Ill. App. 590, relied upon by plaintiff here. However, the plaintiff in this case voluntarily applied for a divorce which, when she obtained it, made her no longer the wife of the defendant. She has contributed nothing to his acquisition of wealth since the

decree was entered. She cannot logically claim that because she was his wife several years before good fortune came to him, she now has a right to participate therein. By her own choice, she was not his wife when he amassed his present wealth. The station in life to which he had accustomed her was that existing in 1931 and prior thereto. It is that station in life in which he is bound to maintain her now, if he is financially able so to do. She cannot ask this court to compel him to maintain her in a station in life to which the present wealth and income of the defendant would entitle her but for her voluntary action in terminating the marriage relation in 1931. . . .

"In view of the conclusion thus reached as to plaintiff's first contention, it becomes comparatively easy to decide the questions raised by plaintiff's second and third contentions. If the defendant is under obligation to pay alimony to the plaintiff in such amounts as are necessary in order to maintain her in the station in life in which he had accustomed her to live at the time the decree was entered, insofar as he is now so able to do, then it follows that he must increase his payments sufficiently to make up for the amount of income tax which she is now required to pay on such alimony receipts. *Jacobs v. Jacobs,* 328 Ill. App. 133. By the same token, he must, if able, pay increased alimony, to compensate for the present diminished purchasing power of the dollar as compared to its purchasing power in 1931. *Gehlbach v. Gehlbach,* 219 Ill. App. 503.

"Believing that the plaintiff is entitled to an increase over and above the one hundred and seventy five dollars per month, provided for by the decree of 1931, it is the court's opinion that such monthly payments should be increased to four hundred and fifteen dollars."

The chancellor thereupon entered the decree from which both parties have appealed. It decrees, *inter alia,*

that the decree of divorce entered in the cause be modified so that defendant pay plaintiff as and for her permanent alimony $415 per month in lieu of $175 per month as provided in the divorce decree. In her brief plaintiff states that the alimony allowance in the decree, considering the then station in life of herself and defendant, was just and reasonable, as defendant had at that time little or no assets and earned about $600 per month. She states her theory as follows: "Subsequent to the decree, the defendant amassed a very great fortune and accumulated assets in excess of One Million Dollars and during the time of the hearings on plaintiff's petition earned $70,000 a year. It is the plaintiff's theory in this case that she having been compelled to divorce the defendant for his misconduct, is entitled to be supported by him in the station of life to which his income and assets enable him to live and that the vast increase of his finances have given him a higher station and enjoyment of material comforts. Plaintiff is entitled to an increase in alimony sufficient to permit a corresponding betterment of her station in life and that in this case the sum of Nine Thousand Dollars per year as recommended by the master is a proper award of alimony." In support of her contention that as defendant "lives a life of luxury with his present wife whose rights are inferior to those of your petitioner," she is entitled to an increase in alimony sufficient to permit her to live in the same station in life as defendant and his wife live, plaintiff testified that she would require an allowance that would permit her to have a larger apartment "on the near north side," a maid, an automobile, new furniture and rugs, several hundred dollars a month to purchase necessary clothes, and that she would like to go on a vacation. Defendant's theory is that "the plaintiff chose to sue the defendant for divorce, rather than separate maintenance. If she had procured a separate maintenance decree, the mar-

riage relation would not have been terminated and she would still be the wife of the defendant. . . . However, the plaintiff voluntarily applied for a divorce which, when she obtained it, made her no longer the wife of the defendant. She has contributed nothing to his acquisition of wealth since the decree was entered. She cannot logically claim that because she was his wife for several years before good fortune came to him, she now has a right to participate therein. By her own choice, she was not his wife when he amassed his present wealth. The station in life to which he had accustomed her was that existing in 1931 and prior thereto. It is that station in life in which he is bound to maintain her now. . . . She cannot ask this court to compel him to maintain her in a station in life to which the present wealth and income of the defendant would entitle her but for her voluntary action in terminating the marriage relation in 1931. . . . She cannot have simultaneously all the freedom of a divorced woman and the benefit of increased support based upon a higher station in life attained by her divorced husband years after the marriage relation was severed by the divorce decree, at her instance.''

In the hearing before the chancellor plaintiff raised four contentions. Contentions 2, 3 and 4 related to her alleged additional needs, and the chancellor sustained these contentions and made allowances for said needs. The chancellor overruled plaintiff's contention 1 and his action in that regard is the sole complaint urged by plaintiff in this appeal.

Our alimony statute (ch. 40, par. 19, sec. 18, Ill. Rev. Stat. 1945 [Jones Ill. Stats. Ann. 109.186]) provides:

''When a divorce shall be decreed, the court may make such order touching the alimony and maintenance of the wife or husband, the care, custody and support of the children, or any of them as, from the circumstances of the parties and the nature of the

case, shall be fit, reasonable and just . . . . And the court may, on application, from time to time, make such alterations in the allowance of alimony and maintenance, and the care, custody and support of the children, as shall appear reasonable and proper.''

In *Herrick v. Herrick,* 319 Ill. 146, the court states (pp. 151, 152, 153):

''. . . The principle on which alimony is given to the divorced wife is, that the husband shall furnish his wife what shall be deemed a suitable support corresponding in degree with his pecuniary ability and *social standing.* . . . A decree for divorce is like a final decree in any other case and cannot be changed except in so far as the statute granting the power to award alimony to the wife authorizes the court to alter it to meet new conditions. . . .

''The foundation of alimony being the obligation of the husband to support his wife, and the decree being merely the enforcement of that obligation in behalf of a wife legally permitted to live apart from her husband, our statute wisely recognizes that a change in circumstances may require a change in the decree. *As the measure of the sum required is necessarily the need of the wife* and the ability of the husband to pay, the amount decreed will logically be affected by change in either element.'' (Italics ours.)

''Courts of equity have no inherent powers in cases of divorce. The jurisdiction of courts of equity to hear and determine divorce cases, and all matters relating thereto, is conferred only by statute. *Smith v. Smith,* 334 Ill. 370. While such courts may exercise their powers within the limits of the jurisdiction conferred by the statute the jurisdiction depends upon the grant of the statute and not upon general equity powers. *Smith v. Smith, supra; Smith v. Johnson,* 321 Ill. 134. Section 18 of the Divorce Act [Ill. Rev. Stat. 1945, ch. 40, par. 19; Jones Ill. Stats. Ann. 109.186] does not enlarge the general equity powers of

the court. It reserves a limited power to review alimony decrees. Being in the nature of a special power it will not be extended beyond its terms. It only authorizes the court to make 'alterations' in the allowance of alimony 'as shall appear reasonable and proper.' '' (*Recklein v. Recklein,* 327 Ill. App. 641, 644.)

The plaintiff in *Smith v. Smith, supra,* filed a petition for the modification of that part of the divorce decree that related to alimony, and the decretal order entered upon the petition was reversed by the Supreme court because it provided that the defendant transfer and deliver to the Northern Trust Company as trustee certain certificates of stock to secure the payment of alimony under the decree. It was held that under the limited power conferred upon the trial court by Section 18 that court had no jurisdiction to require plaintiff in error to deposit the additional stock. The decision in that case is important because of the construction of Section 18 by the Supreme court. The opinion states (pp. 382, 383):

"It is the settled construction of section 18 that it authorizes the change of a decree for alimony based only upon a changed condition or betterment of property qualifications after the decree to *meet additional needs of one entitled to alimony arising after the decree. This is the only ground justifying or authorizing a re-adjustment of alimony by supplemental decree.* (*Cole v. Cole,* 142 Ill. 19; *Herrick v. Herrick,* 319 id. 146.) The criterion is not whether the decree was right when entered, because all presumptions are in its favor, *but the question is, Has the necessity of the petitioner changed since the rendition of the decree, and has the ability of the husband to contribute to it also changed?* (*Craig v. Craig,* 163 Ill. 176.) *The first decree is res judicata as to previous conditions authorizing alimony in the decree.* (*Cole v. Cole, supra.*) The petition, which is the basis for relief, does not aver any fact showing an increased ability since the rendi-

tion of the decree to contribute to petitioner's increased needs, if there are any. It is not enough that she is dissatisfied with the former decree or that in the respect of allowance it may have been erroneous. (*Craig v. Craig, supra.*) In the *Craig case* this court specifically denied the right of inquiry into the original decree upon an application of the kind now at bar. Indeed, *the terms of the statute limit the inquiry to her needs,* and his increased ability to supply them, *arising after the decree.*" (Italics ours.)

The *Smith* case has been cited by the Supreme court a number of times, but the construction of Section 18 contained therein has never, to our knowledge, been overruled or modified.

In *Wiseman v. Wiseman,* 290 Ill. App. 535, the defendant filed a motion to modify the decree in respect to the matter of alimony. The court modified the original decree by providing that he should be relieved from paying any alimony after October 15, 1935, until the further order of the court. The trial court granted the motion and the plaintiff appealed. The Appellate court of the Fourth District held (pp. 538, 539):

"The decree of divorce, based upon the court's findings as to the status of the parties at the time of its rendition, was *res adjudicata* as to previous conditions authorizing the alimony therein provided, and cannot be collaterally questioned in this proceeding; *Smith v. Smith, supra; hence the inquiry now is whether the needs of the respondent have changed since the entry of the decree.*" (Italics ours.)

After reviewing the evidence the court held that the defendant had failed to prove that the plaintiff's "necessity had been lessened or ceased" since the rendition of the decree and reversed and remanded the decree of the trial court with directions to deny the prayer of the petition.

In *Joachim v. Joachim,* 267 Ill. App. 237, this Division of the court had presented a situation where the defendant asked that the payments of alimony of $300

per month, fixed in the decree, be reduced to $150 per month until the further order of the court. We followed *Smith v. Smith, supra,* and held that the action of the trial court in reducing the alimony of $300 per month, as provided in the decree, to $150 per month until the further order of the court was justified under the evidence.

The original decree in the instant case determined, *inter alia,* the social standing, or, as it is sometimes termed, the station in life, of the parties at the time of the entry of the decree and prior thereto (*Herrick v. Herrick, supra,* p. 151; *Gilbert v. Gilbert,* 305 Ill. 216, 221; *Young v. Young,* 323 Ill. 608, 616, and *Byerly v. Byerly,* 363 Ill. 517, 525), and, as we have heretofore stated, plaintiff states that the alimony order entered in the decree was sufficient to maintain her in the manner of living to which she and deferdant were accustomed to live at the time the decree was entered and prior thereto.

Defendant started his own business in July, 1935, and it was kept alive for a number of years by his father, who advanced defendant $25,000 in order to enable defendant to try out commercially an idea that he had, and it was not until 1939, *eight years* after the divorce, that the business became self-supporting. Plaintiff's petition was filed more than fourteen years after the divorce. After giving careful consideration to the novel contention of plaintiff we have reached the conclusion that it is without merit. Indeed, Section 18 did not confer authority upon the chancellor to hear and determine the subject matter of plaintiff's contention. In passing upon her petition to increase the amount of alimony allowed in the decree, the inquiry was limited to her additional needs. (See *Smith v. Smith, supra,* p. 383.) The station in life to which defendant had accustomed plaintiff at the time of the entry of the decree and prior thereto is the station in life in which he is bound to maintain her now. The

present great wealth of defendant is proof that he is abundantly able to provide her with all of her necessities, and equity, in passing upon her needs, should not act in a niggardly manner. The chancellor in the instant case took that attitude and it is not claimed that the chancellor did not make fair allowances for plaintiff's *additional needs*.

- Upon the oral argument counsel for plaintiff contended that *Humbird v. Humbird* [42 Idaho 29], 243 P. 827, decided by the Supreme court of Idaho, supports plaintiff's contention. While we have not deemed it necessary in passing upon this appeal to consider decisions of the sister States, we will, however, refer to the *Humbird* case. There the husband filed a suit for divorce alleging desertion. The wife filed an answer denying the desertion and also filed a cross-complaint charging extreme cruelty. While the husband was serving as a soldier in the American army in France, in August, 1918, his attorney, for some reason not shown by the record, requested that the case be brought to trial at once and without the plaintiff's presence. At the hearing it appeared that the husband was receiving $166 per month as a soldier but that he was capable of earning much more as a civilian. The court dismissed the husband's complaint for want of equity and found that he was guilty of extreme cruelty and inhuman treatment, as charged in the cross-complaint. A decree of divorce was granted the wife and the husband was ordered to pay her the sum of $5,175 forthwith and $60 per month for her maintenance and support and an additional sum of $30 per month for the support and maintenance of the child. Because it appeared that the salary of the husband as a soldier did not reflect his earning capacity as a civilian the following provision was incorporated in the decree:

"It is further ordered, adjudged, and decreed that the power and authority be and is hereby reserved in the court to hereafter and at any time further inquire

into the property of plaintiff or the earning ability of plaintiff, as his health and property interests may change, for the purpose of modifying as to monthly payments of alimony to defendant and cross-complainant and the payments to defendant for the care and maintenance of the said infant child of plaintiff and defendant, Dorothy Jane Humbird.''

On November 17, 1924, the wife filed an application for modification of the decree awarding alimony which alleged that she had expended all of the money paid to her by her husband under the provisions of the decree; that she was not able to support herself on the sum of $60 per month and was not able to support the minor child on $30 per month; that she had no funds to meet the necessary expenses of maintaining herself and child. Upon the hearing of the application it appeared that the husband was no longer in the service and was then receiving a salary of $10,000 per year. The court entered an order modifying the original decree and directing the husband to pay to his wife $100 per month for her support and $80 per month for the support of the minor child. The husband appealed from that order. The sole points urged by him upon the appeal were that the amounts allowed were unreasonable and that he was unable to pay the same. The Supreme court of Idaho held that the trial court had not made sufficient allowances for the support of the wife and child and in so holding they used the following language (pp. 829, 830): ''. . . when regard is had to the changed circumstances of the husband, if the allowance made is to correspond with the social position of respondent's former husband and maintain her in the style and condition that his financial position would reasonably have justified her in maintaining but for his wrongful conduct.'' Plaintiff insists that this language supports her contention. As we read the opinion, this language, in view of the plaintiff's contentions in that case upon the appeal, is

*obiter*. We do not regard the *Humbird* case as applicable to the question before us.

The chancellor ordered that the increase in alimony be retroactive to January 1, 1946, and plaintiff contends that he should have ordered that the payments be retroactive to July 9, 1945, the date of the filing of her petition. We are unable to find that the chancellor abused his discretion in this matter.

Defendant has assigned cross-error in which he feebly contends that the trial court should have allowed plaintiff $239.89 per month. It is a matter of common knowledge that when the decree of divorce was entered this country was in the depths of a great depression and the allowance of $175 per month alimony in the decree had greater purchasing power at that time than $239.89 has today. Defendant concedes that plaintiff is entitled to additional allowances because of the increase in the cost of living and her liability for income taxes on her alimony. Defendant by 1940 had a very large income and had taken out of his business a million dollars plus, but until the entry of the instant decretal order he was obligated to pay only $175 a month. It is surprising, indeed, that he would ask a court of equity to fix plaintiff's alimony at $239.89 per month.

The decretal order of the Circuit court of Cook county is affirmed.

*Decretal order affirmed.*

FRIEND, P. J., and SULLIVAN, J., concur.