**James William HUNT,
Defendant-Appellant,**

v.

**Genci Suzanne HUNT b/n/f and Natural Guardian Emma Jane (Hunt) Allen and Emma Jane (Hunt) Allen, Plaintiff-Appellee.**

No. 1–1183A353.

Court of Appeals of Indiana,
First District.

June 26, 1984.

Stephen M. Sellmer, Carmel, for defendant-appellant.

James P. Casey, Bowers, Harrison, Kent & Miller, Evansville, for plaintiff-appellee.

NEAL, Presiding Judge.

### STATEMENT OF THE CASE

Defendant-appellant James William Hunt (James), appeals an order entered by the Warrick Circuit Court fixing a support order in favor of his former wife, Emma Jane

(Hunt) Allen (Emma), for and on behalf of the child of their former marriage, Genci.

We affirm.

## STATEMENT OF THE FACTS

The record discloses that Emma and James were married on April 1, 1966, in Montgomery County, Tennessee at which time Emma was pregnant. Shortly thereafter, James deserted Emma and on May 5, 1966, in a criminal support proceeding, the Maury County Court in Tennessee entered a record which recited that James had been arrested, appeared in court, and admitted that he was the father of an expected child. The court so found and entered a support order commencing May 14, 1966 in the amount of $15.00 per week, "and continuing in the same amount for ____ consecutive weeks thereafter". The child, Genci, was born on July 16, 1966. The record does not disclose that any payments were made pursuant to that order. On August 19, 1968, pursuant only to notice by publication, Emma obtained a divorce from James in the Montgomery County Court in Tennessee. The court found that James was Genci's father, awarded custody of her to Emma, but failed to enter any support order.

On February 17, 1982, James filed his petition in the Warrick Circuit Court in Indiana, Cause No. C–82–87, to modify the Tennessee decree of divorce to grant him custody of Genci. In that petition, he alleged that he was the father of Genci. James and Emma appeared personally, and the transcript of that proceedings disclosed that Emma and the child resided in Warrick County, Indiana, and James resided in Hamilton County, Indiana. The court found that it had jurisdiction of the parties, that James was the father of Genci, and awarded James the custody of Genci. However, in the same cause number, C–82–87, on August 20, 1982, the court, upon joint petition of James and Emma, returned the custody of Genci to Emma. Thereafter, on December 3, 1982, in the same cause number, C–82–87, a pleading was filed entitled "Civil Complaint and Information for Contempt", in two paragraphs. In paragraph I, Genci was designated the plaintiff and the prayer thereof sought support arrearages from May 5, 1966; in paragraph II, Emma was designated as plaintiff and sought to enforce the May 5, 1966 Tennessee support order by contempt. Also, on the same day in the same cause number, Emma filed a petition to modify and increase the May 5, 1966 Tennessee support order. After hearing evidence, the Court entered an order, prospectively, requiring James to pay $30.00 per week to Emma for Genci's support. The evidence at the hearing held on May 18, 1983 was as follows: Genci was 16 years of age, resided with her mother, and James was her father. Emma earned $164.00 per week, was remarried, owned a home with her present husband, and had a $176.00 per month mortgage payment. Taxes were $240.00 per year; utilities were $115.00 per month; insurance was $350.00 per year. They had expenses of life insurance payments and clothing expenses for Genci. Genci had a car which was necessary in order for her to go to work and school. Emma gave Genci $10.00 per week for school lunches and spending money. Genci worked in a restaurant in the evenings and on weekends and earned $70.00—$75.00 per week, and had a $285.00 savings account. James presented no evidence on his ability to pay support or that he had ever paid support. The record reflected that he had recently taken bankruptcy. It is from the order for support that James appeals.

## ISSUES

James presents six assigned errors for review. His argument essentially presents two issues, restated by us as follows:

I. Jurisdiction;

II. Abuse of discretion in imposing a support order.

## DISCUSSION AND DECISION

■ James' argument appears to proceed as follows. The claim to modify was based upon a Tennessee judgment in a criminal case for the support of Emma, and that judgment was entered before Genci

was born. The divorce decree made no provision for the support of Genci, and the Indiana court has no jurisdiction to modify a Tennessee criminal case judgment. The parties cannot waive or even confer subject matter jurisdiction by agreement. The duty to support Emma ceased at the time of the divorce in 1968, and the statute of limitations has run for the enforcement of any support arrearage for Emma.

Emma argues that the trial court treated the petition to modify as a petition for support. Our reading of the transcript convinces us that he did. We therefore do not propose to answer each of James' many bare assertions which are unsupported by relevant authority. The issue is not whether the court could modify a criminal judgment entered in Tennessee, or even whether the support order was for Emma only, but whether an Indiana court has jurisdiction to enter a support order against a father when the Tennessee divorce court did not do so, wherein all parties are now residents of Indiana. We answer that question in the affirmative.

In *Crowe v. Crowe*, (1965) 247 Ind. 51, 211 N.E.2d 164, the Supreme Court said:

"A husband and father at common law has the duty and obligation to support his children without any court decree or order. A court order requiring the payment of this support does nothing more than carry out the common law principle involved, although the statute makes it mandatory upon the court entering a divorce decree to provide for the support of any minor children. Burns' Ind.Stat. Anno. Sec. 3–1219 (1965 Supp.)

Even bankruptcy does not relieve a father of the obligation to make support payments for his children. *Hylek v. Hylek* (7th Cir.1945), 148 F.(2d) 300.

'It is the first duty of divorced parents, resting primarily on the father, to support their children. The liability to support may arise where the decree is silent both as to custody and maintenance, ...' 27B C.J.S., Divorce, Sec. 319(1)a, p. 591."

*Crowe, supra*, at 54, 211 N.E.2d 164.

This present issue was decided in *Kniffen v. Courtney*, (1971) 148 Ind.App. 358, 266 N.E.2d 72. In *Kniffen*, a petition was filed in Indiana to modify a Kentucky divorce decree and increase the child support. The former husband, former wife, and the children all resided in Vanderburgh County where the petition was filed. Upon a jurisdictional challenge based upon full faith and credit, the Court of Appeals held that while the Indiana court must give full faith and credit to the Kentucky decree,

"... the courts of Indiana are not obligated to give the decree any further effect than is the State rendering the decree. Thus, those portions of the decree that are not final, i.e. custody and support, fall within the doctrine of comity and if valid in the State granting the divorce are valid in every other State."

*Kniffen, supra*, at 363, 266 N.E.2d 72.

\* \* \* \* \* \*

"It appears on the face of appellant's complaint that the court of Kentucky has the power to modify the support order; therefore, the courts of Indiana may modify the support order if conditions presented to the court warrant such action.

Upon a proper showing that it is in the best interests of the children, the Superior Court of Vanderburgh County has the power to modify the support order prospectively, *i.e.*, as to future payments only."

*Id.* at 364, 266 N.E.2d 72.

"Even where the courts of the jurisdiction rendering the decree are empowered to modify or cancel the accrued arrearage, courts of a sister-State are at liberty to enforce payment of such arrears so long as the husband has not initiated proceedings to modify or cancel the arrears. *Griffin v. Griffin*, 327 U.S. 220, 235 [66 S.Ct. 556, 563, 90 L.Ed. 635] (1946).

In accordance with the general principle of conflicts of law where there is no evidence concerning the power of the court rendering the decree to cancel or

modify accrued arrears, it will be presumed by the court which entertains the action to enforce payment of arrears that the law of the State rendering the decree is the same as the law of the State entertaining the action. *Clark v. Clark,* 380 P.2d 241 (Okla.1963). *Clester v. Heidt's Estate,* 353 P.2d 699 (Okla.1960). Because the courts of Indiana are without the power to modify or cancel the arrears we presume that the law of Kentucky is the same. Thus, it is not necessary that appellant reduce the arrearage to judgment in Kentucky before bringing suit in Indiana to obtain payment. *Accord: Clark v. Clark, supra; Clester v. Heidt's Estate, supra; Salzano v. Salzano,* 74 N.J.Super. 408, 181 A.2d 414 (1962).

In the instant case the children and both parents reside in Vanderburgh County, Indiana. The State of Indiana has an interest in assuring that minor children are properly supported. Indeed, if parents fail in their obligation to support their minor children, the responsibility falls squarely upon the State or a political subdivision thereof.

In the State of Indiana a valid foreign divorce decree cannot serve as an obstacle, standing in the way of a person who has legal custody, to enforce the father's legal obligation to provide support or to obtain a judgment for the accrued arrearage of such support.

The Superior Court of Vanderburgh County, having jurisdiction of the parties and the subject matter, is required to give full faith and credit to the Kentucky divorce decree. Upon a proper showing of changed conditions the court has the power to prospectively modify the support order which is incorporated into the decree. Absent a showing by appellee that the law of Kentucky is to the contrary, the court may also reduce the arrears, if properly supported by the evidence, to a judgment.

*Id.* at 365–366, 266 N.E.2d 72. *See also County of Ventura, State of California v. Neice,* (1982) Ind.App., 434 N.E.2d 907.

It requires no citation of authority to demonstrate both that a father owes a legal duty to support his child in Indiana and that a support order can be modified. As the record is silent to the contrary, we presume the Tennessee law is the same. The rationale of *Crowe* and *Kniffen* is incorporated into the Uniform Reciprocal Enforcement of Support Act, IND.CODE 31–2–1–1, *et seq.* Under that Act, support orders imposed or impossible to enforce in one state can be enforced in another without any jurisdictional impediment. IND. CODE 31–2–1–23.

At any rate, in the present case, James himself invoked the jurisdiction of the Warrick Circuit Court to modify the decree as to custody; such modification poses a similar jurisdictional problem. Thus, it would seem he submitted to Indiana jurisdiction. However, the court herein treated the petition to modify as a petition for support and entered an order prospectively. We are of the opinion the trial judge had the requisite jurisdiction to do so.

*Issue II: Abuse of Discretion*

James argues that there was no evidence of a change in economic circumstances of the parties or that Genci needed support. In *Crowe v. Crowe,* the court said:

"The court determines under the evidence, as in this case, what is a reasonable sum required for the support of such child or children. If there is evidence or facts under which the father is relieved from his common law and statutory duty of support, it is incumbent upon him to come forth with such evidence in mitigation or defense. The burden is upon the father to show that he cannot support his child or children or pay all the sums required for their support. Such evidence might show that the father is unable, physically or mentally, to engage in employment or is unable for other reasons, to obtain employment and has no other income with which to make such payments. These are all matters of defense and such evidence is peculiarly within the control and knowledge of the father. He is in better position to fur-

nish the evidence as to his ability to support or not support his children than anyone else. In considering this question, it is the children's interest with which the court is primarily concerned. It should not be looked upon as a game between divorced parents who are in disagreement.

\* \* \* \* \* \*

It is also urged that the only change in conditions shown by the evidence is that of time, now approximately ten years, and that time alone cannot be used as a basis for a change in the support order. We do not agree with this contention. We judicially know that it takes more to support a child of ten years of age than it does one of nine months of age when the original order was made. Such a change in costs in the support of a child after ten years is a matter of common knowledge, ignoring any increase in the index registering the cost of living during the period of approximately ten years. We feel after a period of ten years, time alone has created a change in conditions as it affects support payments for a growing child to warrant a court to consider a petition for modification. *Arnold v. Arnold* (1947), 332 Ill.App. 586, 76 N.E.2d 335, 18 A.L.R.2d 1."

*Crowe, supra,* at 54–55, 211 N.E.2d 164.

■ James seems to advance the argument that since he deserted Emma and Genci and did not pay support for 16 years and others fulfilled that duty for him, he now is exonerated from further obligations. He, of course, has no authority for that extraordinary assertion. The duty of support is continuous. The statute of limitations is not applicable. *See Matter of M.D.H.,* (1982) 437 N.E.2d 119. Bankruptcy is no defense. *Crowe v. Crowe, supra; Hylek v. Hylek,* (7th Cir.1945) 148 F.2d 300. Here, there is no contention of emancipation. We find no abuse of discretion.

For the above reasons, this cause is affirmed.

Judgment affirmed.

ROBERTSON and RATLIFF, JJ., concur.