**In re The Marriage of William T. GLOVER, Appellant– Respondent,**

v.

**Tammy TORRENCE, Appellee– Petitioner.**

No. 49A02–9903–CV–205.

Court of Appeals of Indiana.

Feb. 7, 2000.

David M. Henn, Stowers, Weddle & Henn, Indianapolis, Indiana, for Appellant.

Michael Cheerva, Phelps & Fara, Indianapolis, Indiana, for Appellee.

## OPINION

BAKER, Judge

Appellant–Respondent William T. Glover ("Father") appeals the modification/increase of his child support obligation after a trial before the bench upon the petition of Appellee–Petitioner Tammy Torrence ("Mother"). Father also appeals the trial court's grant of relief from judgment with respect to two earlier child support orders established in 1991 and 1994 respectively on the basis that Father falsely verified (understated) his income during those proceedings. Father raises eight issues which we consolidate and restate as follows: (1) Whether the trial court erred in awarding Mother a child support arrearage based on Father's false verification of his income during modification proceedings held in 1994; (2) Whether the trial court erred in awarding Mother a child support arrearage based on Father's false verification of his income during modification proceedings held in 1991; (3) Whether the trial court erred in setting the amount of Father's present child support obligation; (4) Whether the trial court abused its discretion by allocating the dependency income tax exemption to Mother; and, (5) Whether the trial court erred by ordering Father to pay Mother's reasonable attorney's fees in the amount of $6,400.00.

## FACTS

The evidence most favorable to the trial court's judgment reveals that Father and

Mother married in 1982, their child was born in 1983, and the parties were divorced in 1984. Mother was awarded custody and Father was ordered to pay child support in the amount of $25.00 per week.

Thereafter, in 1991, Mother filed a petition to modify (increase) Father's child support obligation. During these proceedings, Father filed a "Verified Financial Declaration" with the court in which he affirmed under penalty of perjury that he earned $400.00 per week. R. at 43–47. The case was settled by the parties' agreement that Father's child support obligation be increased to $89.00 per week. R. at 54.

On July 12, 1993, Father filed a verified petition (under penalty of perjury) to modify his child support obligation, which read in pertinent part as follows:

On March 15, 1991, this Court entered a child support order in the amount of eighty-nine dollars ($89.00) per week. This child support was based, in part, upon [Father's] gross earnings of four hundred dollars ($400.00). After the entry of this child support order, [Father] lost his job and took employment ... [that paid] two hundred and sixty dollars ($260.00) per week.

R. at 103–04. Father also alleged in his petition that his 1994 earnings would be lower because he was to be incarcerated for a felony conviction. R. at 103, 321. Father spent three months in jail. Father's petition to modify was submitted to mediation during which the parties reached an agreement that provided, among other things, that Father's child support obligation would be lowered to $57.00 per week. R. at 121. In conjunction with the 1994 modification agreement, Father filed a verified child support worksheet, signed on July 21, 1994, in which he affirmed, again under penalties of perjury, that he earned $366.00 per week. R. at 119, 259. On August 3, 1994, the trial court approved the parties' agreement. R. at 120–22.

In 1998, Mother initiated the present proceedings by filing a pleading styled "MOTION TO SET ASIDE AGREEMENT OF AUGUST 3, 1994 FOR FRAUD." R. at 166. Mother requested relief under Ind. Trial Rule 60(B)(3) alleging that Father had committed a fraud upon the court by perjuriously misrepresenting that he earned only $366.00 per week on the child support worksheet. Mother submitted Father's 1994 income tax returns which revealed that Father earned nearly $500.00 per week that year which indicated that he should have been paying $15.00 more per week in child support under the guidelines. R. at 167, 170. Mother requested that the 1994 modification proceedings be reopened and that Father be found in arrears in the amount of child support that Father would have owed had he accurately represented his earnings. Mother also requested that Father's current child support obligation be modified/increased.

The matter proceeded to trial on October 14 and 18, 1998. During opening statements, Mother's attorney stated:

And we are going to be asking the Court to set aside the '94 order for fraud .... and there is evidence of fraud in '91, also ... as to what [Father's] income and his ability to pay....

R. at 239. Father objected to evidence pertaining to the allegedly perjurious statements made during the 1991 proceedings on the basis of relevance. R. at 281. Father's counsel argued:

This was back in '91, and the agreement that we're talking about setting aside is '94.

R. at 281. Mother's attorney argued that the evidence was relevant to establish that Father "committed the same or similar fraud in the past." R. at 281. The trial court overruled Father's objection. Later, Father raised another objection pertaining to evidence regarding the period before 1994. R. at 348. Mother's attorney responded:

Your Honor, our purpose for offering it is, we do have a petition on file for the

fraud, and it was related to '94. There has been evidence offered as to '91, and this is a loan application that is signed under penalty of perjury and imprisonment. So I think as far as the admissibility ... this Court has plenty of evidence in front of it as to what he swore to somebody else besides this Court he was making, at the same time he was swearing to this Court that he was making a substantially less sum, and the child support was calculated based on that.

R. at 348. The trial court again overruled Father's objection.

Evidence was submitted which indicated that Father had actually earned approximately $1,030.00 per week in 1991. R. at 289–90. Records from Father's employer revealed that he had earned approximately $525.55 per week in 1994. Mother testified that Father did not exercise regular visitation with the child in 1994.[1] R. at 323. Moreover, Father openly admitted that he had provided false information to the court in the past. R. at 384, 423.

Father testified that he has remarried and has adopted his wife's child. Father filed a Verified Financial Declaration in which he swore under penalty of perjury that he was currently earning $400.00 per week. R. at 175–77. However, in the same financial declaration, Father declared expenses exceeding $1,000.00 per week. R. at 175–77. In total, Father's evidence indicated that his expenses totaled $55,-400.00 per year or $1,065.00 per week. R. at 204. According to Father's income tax return, Father's wife does not work outside the home. R. at 358, 414. However, Father's wife receives $9,823.00 in social security death benefits as the result of her former husband's death on behalf of the child Father adopted. R. at 200, 413.

Mother does not work outside the home. Mother remarried and two children were born to that marriage. However, Mother's husband died. As a result of her husband's death, Mother receives social security death benefits in the amount of approximately $25,668.00 per year on her own behalf and on the behalf of all three children, including Father's child. R. at 308, 312. On the child support worksheet, Mother listed her income as $331.62 a week, representing the amount of social security benefits she received on her own behalf and on the behalf of Father's child. R. at 308, 436. Although Mother has not had taxable income in the recent past, she plans to marry her fiancé and requested that the trial court allocate the income tax exemption for the child to her in order to reduce the income tax on the joint income tax returns she would be filing with her husband. Mother's fiancé carries health insurance through his employer on Father's child at the cost of $24.00 per month. R. at 293–95.

In its findings and judgment, the trial court determined that, had Father accurately disclosed his income, he would have been required to pay additional child support in the amounts of (1) $7,605.00 (representing the period between 1991 and 1994), and (2) $6,398.60 (representing the period between 1994 to 1998). R. at 206–07. The trial court granted Mother relief from both the 1991 and 1994 modification proceedings and ordered Father to pay Mother the sum of those amounts, $14,003.60. R. at 207.

The trial court rejected Father's evidence regarding his income and found that he earned $55,400.00 per year or $1,065.00 per week based upon his reported expenses. R. at 204, 211. In reaching this conclusion, the trial court expressly found that (1) Father had never been truthful about his income and ability to support himself, (2) the evidence showed that Father's household expenses totaled $55,-440.00 per year, and (3) Father's wife did not work outside the home. R. at 204.

---

1. However, we note that the trial court found that at the time of the 1998 proceedings, Father had been exercising regular visitation. R. at 202.

The trial court determined Mother's income to be $331.62 per week based on the amount of social security benefits she receives on her own behalf and on the behalf of Father's child. R. at 211. Applying the Indiana Child Support Guidelines, the trial court ordered that Father's current child support obligation be increased to $146.00 per week. R. at 204, 211. Further, the trial court entered the following finding with respect to the income tax exemption for the child:

> The amendments to the Indiana Child Support Rules and Guidelines now specifically provide commentary for when a Court should order a release of the income tax exemptions. *See,* Support Guideline 6. Additional commentary. Considering the factors mentioned by said commentary, the Court finds that [Mother's] household should benefit from having [the child] as an income tax exemption since [Mother's future husband] ... has provided substantial support for [the child's] benefit.

R. at 203.

Finally, the trial court ordered Father to pay Mother's attorney's fees in the amount of $6,400.00. In conjunction with this award, the trial court found that Mother earned substantially less than Father and that the present litigation was necessitated by Father's fraud. R. at 207–08.

2. Father contends that Mother's petition constitutes an inappropriate collateral attack upon the mediation proceedings which produced the 1994 modification agreement and that the trial court's grant of relief from the 1994 judgment violates the confidentiality and integrity of the mediation process. While we affirm our commitment to the vigorous protection of the confidentiality of mediation proceedings and the integrity of that process, *see* Ind. Alternative Dispute Resolution Rule 2.1; *Marchal v. Craig,* 681 N.E.2d 1160, 1162–63 (Ind.Ct.App.1997), we must nevertheless reject Father's argument out of hand.

Since 1989, the Indiana Child Support Guidelines have required, in all cases in which the court is requested to order support,

## DISCUSSION AND DECISION

### I. Standard of Review—Bench Decision

As stated in *Hermitage Ins. Co. v. Salts,* 698 N.E.2d 856, 858 (Ind.Ct.App.1998):

> On appeal of a bench decision, the appellate court will not set aside the judgment unless it is clearly erroneous. Ind. Trial Rule 52(A). When the trial court enters findings on its own motion (as in the present case), specific findings control only as to issues they cover while a general judgment standard applies to any issue upon which the court has not found. The reviewing court will affirm if the judgment can be sustained on any legal theory supported by the evidence most favorable to the judgment, together with all reasonable inferences to be drawn therefrom. Where trial court findings on one legal theory are adequate, findings on another legal theory amount to mere surplusage and cannot constitute the basis for reversal even if erroneous.

(citations omitted).

### II. Setting Aside the 1994 Modification on the Basis of Fraud

■ Father, relying primarily upon his own testimony, argues that the figure used for his income on the 1994 child support worksheet was not falsified, but was agreed upon by the parties in mediation.[2] Father argues further that Mother's petition for relief from the 1994 judgment on

that both parents fill out and sign a child support worksheet to be filed with the court verifying the parents' incomes under penalty of perjury. Ind. Child Support Guideline 3(B) (including commentary). Obviously, the income verification requirement is necessary to ensure that children obtain the support to which they are entitled. *See generally Beardsley v. Heazlitt,* 654 N.E.2d 1178, 1181–82 (Ind.Ct.App.1995). Therefore, public policy requires that we reject Father's attempt to circumvent the worksheet income verification requirement imposed by our supreme court with a bald claim that the figure used for his income on the verified worksheet was falsified by agreement in confidential mediation proceedings.

the basis of fraud pursuant to T.R. 60(B)(3) was untimely, not having been filed within the one year prescribed by the rule. *See* T.R. 60(B) (providing that a motion based on any of the subdivisions (1) through (4) may not be filed more than one year after judgment). Additionally, Father contends that the evidence shows that, at most, he committed perjury, an intrinsic fraud, insufficient to constitute an actionable fraud on the court available outside the one-year period.

■ Initially, we note that a trial court's decision whether to grant a motion for relief from judgment is within its sound discretion. *Zwiebel v. Zwiebel*, 689 N.E.2d 746, 748 (Ind.Ct.App.1997), *trans. denied.* Thus, we will reverse that determination only when the trial court has abused its equitable discretion. *Id.*

■ In the instant case, the trial court granted Mother's motion for relief from the 1994 judgment on the basis of fraud. In Indiana, a judgment may be attacked on the basis of fraud in the following three ways: (1) pursuant to T.R. 60(B)(3) for intrinsic or extrinsic fraud; (2) an independent action for extrinsic fraud; and, (3) an independent action for fraud on the court. *In re Marriage of M.E.*, 622 N.E.2d 578, 581 (Ind.Ct.App.1993).

■ The first method of attack, pursuant to T.R. 60(B)(3), is only available within one year from the date of judgment. *Id.* Further, a motion alleging intrinsic fraud must be made under this method. *Matter of Paternity of K.M.*, 651 N.E.2d 271, 277 (Ind.Ct.App.1995). Here, Mother's motion was not brought within the one-year period and, therefore, T.R. 60(B)(3) cannot sustain the trial court's grant of relief from judgment.

■ The second and third methods of attack, independent actions alleging extrinsic fraud or fraud on the court, are encompassed within the savings clause of T.R. 60(B) which provides as follows:

This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order or proceeding or for fraud upon the court.

With regard to these independent actions, our courts have consistently distinguished between extrinsic and intrinsic fraud and have found that a trial court only has inherent equitable jurisdiction to grant relief from a judgment obtained by extrinsic fraud or fraud on the court. *See Chermak v. Chermak*, 227 Ind. 625, 627–29, 88 N.E.2d 250, 251–52 (1949) ("[T]he fraud alleged is a matter of intrinsic fraud, and under the decisions of this court, ... this fraud cannot be the foundation of a suit to vacate the judgment attacked."); *In re Marriage of M.E.*, 622 N.E.2d at 581; *Matter of Paternity of R.C.*, 587 N.E.2d 153, 156 (Ind.Ct.App.1992).

■ Thus, it is necessary that we distinguish between intrinsic fraud, extrinsic fraud and fraud upon the court. Intrinsic fraud involves matters which were presented to and considered by the trial court in its judgment, such as a fraudulent instrument or perjured testimony. *Chermak*, 227 Ind. at 627, 88 N.E.2d at 252; WILLIAM F. HARVEY, 4 INDIANA PRACTICE 60.6 at 181 (1991). False evidence, whether in the form of perjured testimony under oath in open court or in a pleading or affidavit admitted into evidence, is defined as intrinsic fraud. *Matter of Paternity of K.M.*, 651 N.E.2d at 277. As stated above, while false evidence may sustain an action for intrinsic fraud, it may not, standing alone, sustain an action for extrinsic fraud or fraud on the court. *Id.* Part of the rationale for limiting the ability to obtain relief from a judgment based on intrinsic fraud is that, when the issue was initially before the trial court, the party now seeking to set aside the judgment could have addressed the issue and, in particular, disputed the perjured testimony. *See Chermak*, 227 Ind. at 628–29, 88 N.E.2d at 251–52; 47 AM.JUR.2D *Judgments* § 929 (1995) at 396 (noting that a collateral attack on a

judgment procured by intrinsic fraud is not warranted because the parties had the opportunity at trial through cross-examination and impeachment to ferret out and expose false information presented to the trier of fact); 49 C.J.S. Judgments § 468 at 633–34 (noting that ordinarily, relief on the ground of fraud cannot be predicated on matters or issues which actually were, or which with due diligence, could have been presented and adjudicated in the original proceedings).

 While extrinsic fraud and fraud on the court are closely aligned, as both require more than perjury, there are differences between the two. Extrinsic fraud may be found where the fraudulent matter prevented a trial of the issue in the case or improperly procured the exercise of the court's jurisdiction. *Matter of Paternity of K.M.*, 651 N.E.2d at 277. In other words, "it is fraud outside the issues of the case." *Chermak*, 227 Ind. at 628, 88 N.E.2d at 251. Fraud upon the court, on the other hand, has been more narrowly limited to the most egregious of circumstances where an unconscionable plan or scheme was used to improperly influence the court's decision, and such acts prevented the opposing party from fully and fairly presenting his case. *Matter of Paternity of K.M.*, 651 N.E.2d at 277.

 Here, Mother's motion for relief from judgment was premised on Father's falsification of his 1994 income figure on the child support worksheet, which he signed under penalty of perjury.[3] R. at 166–67. While we do not condone Father's actions, we observe that Mother could have easily verified Father's income during the support proceedings, or within a year thereafter, by obtaining income tax returns and employment records. We note that Mother was represented by counsel during the proceedings. Further, we note that while she brought documentation to the mediation to prove her income, Father brought no income verification. R. at 257–58, 319. Instead of demanding such independent verification or conducting discovery, Mother took Father at his word and then waited nearly four years after the judgment was entered to challenge such information. As each party's income was clearly an issue in the child support proceedings and Father's actions did not prevent a trial of this issue or rise to the level of an unconscionable plan or scheme which prevented Mother from fully and fairly presenting her case, we find that his actions merely amounted to intrinsic fraud.[4] Therefore, we hold that the trial court abused its discretion in granting Mother relief from judgment beyond the one year limit in T.R. 60(B)(3).[5]

3. While Father contends that he did not fraudulently misrepresent his income, we find that the evidence in the light most favorable to the judgment supports the trial court's conclusion to the contrary. Thus, we decline Father's invitation to reweigh the evidence.

4. Were we to hold otherwise, we would open the floodgates to attacks on final judgments at any time if a party to the judgment simply alleges that an unchallenged, intentional misrepresentation was made during child support proceedings.

5. While we recognize the strong public policy in Indiana of protecting the welfare of every child, as espoused by the dissenting opinion, we do not believe that this is the appropriate case in which to adopt an intrinsic fraud exception to the well established time restraints imposed by T.R. 60(B)(3). Specifically, we observe that the cases from other jurisdictions that the dissent relies on to establish the intrinsic fraud constituting breach of fiduciary duty exception are distinguishable. Each of these cases narrowly applies the exception to situations involving traditional fiduciary relationships, not simply confidential relationships. For example, in *Beirne v. Barone*, 529 A.2d 154 (R.I.1987), the Rhode Island Supreme Court held that a decree allowing the conservator's final accounting and discharge could be collaterally attacked for fraud, as the conservator admitted to self-dealing. Specifically, the Court explained application of the exception as follows:

In the context of trustee/beneficiary relations, analogous to guardian/ward relations in their fiduciary nature, . . . the nondisclosure of self-dealing by a trustee in an account, as a breach of his fiduciary duty, has been held to constitute fraud sufficient to open a final decree allowing such ac-

### III. 1991 Modification Proceedings— An Issue Outside the Pleadings

Father correctly asserts that Mother did not allege the 1991 fraud in her pleading that initiated the present litigation. Father asserts that he conducted no discovery with respect to the 1991 proceedings because he had no notice that Mother would be seeking relief from that judgment. Father contends the trial court's order setting aside the child support order established in 1991 is erroneous as outside the pleadings and issues litigated. We must agree.

 The issues of a case are not necessarily determined by the pleadings, but can be altered by the evidence adduced at trial. *Ayr–Way Stores, Inc. v. Chitwood,* 261 Ind. 86, 89–91, 300 N.E.2d 335, 337–38 (1973). Indiana Trial Rule 15(B) reads as follows:

When issues not raised by the pleadings *are tried by express or implied consent* of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made *upon motion of any party* at any time, even after judgment, but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence.

(emphasis added). The purpose of T.R. 15(B) is to provide some flexibility in liti-

count.... The existence of the fiduciary relationship in such circumstances ... obliterates the distinction between extrinsic and intrinsic fraud applied by many courts in determining whether to permit an attack on a final judgment[.]
*Id.* at 157–58.
In another case of self-dealing by a trustee, the Minnesota Supreme Court explained that the rationale behind this exception is that a trustee has a duty of disclosure and beneficiaries typically have neither opportunity nor occasion to contest a trustee's actions. *See In re Enger's Will,* 225 Minn. 229, 239, 244, 30 N.W.2d 694, 701, 703 (1948). The Court further explained:
It is the trustee's duty to disclose to the beneficiary fully, frankly, and without reservation all facts pertaining to the trust....
Because a beneficiary may rely upon the disclosures in the trustee's account and the petition for its allowance, a proceeding for the allowance of the account does not impose upon the beneficiary as an ordinary adversary the burden of making his own inquiry to ascertain the truth of the trustee's disclosures. The beneficiary may accept them as true. In this respect the rule is different from what it is in ordinary litigation, where the parties are not only adversary, but where there is no fiduciary relationship.
*Id.* at 239–40, 30 N.W.2d at 701–02.

The final case relied on by the dissent is *In re Sullivan's Estate,* 51 Ariz. 483, 78 P.2d 132 (1938). This case involved a collateral petition for suspension and removal of executors, alleging waste and mismanagement of the property of the estate. After noting the distinction between extrinsic and intrinsic fraud, the Arizona Supreme Court explained the following exception to the general rule that an order may not be attacked based on intrinsic fraud:
If, however, the party who speaks falsely or refuses to speak truly occupies a fiduciary relation towards the injured party so that it is his duty to state all of the facts, and if further he personally profits by his own fraudulent conduct, such conduct will justify a court of equity in intervening even in a collateral proceeding, whether the fraud be considered extrinsic or intrinsic.
*Id.* at 495, 78 P.2d at 137.
In the instant case, we cannot agree with the dissent that there exists the type of fiduciary relationship found in the cases discussed above. Furthermore, we cannot close our eyes to the adversarial nature of child custody and support proceedings. Thus, we decline to adopt the exception espoused by the dissent.

gating a case and to promote justice by permitting evidence brought in at trial to determine the liability of the parties. *Schoemer v. Hanes & Associates, Inc.*, 693 N.E.2d 1333, 1340 (Ind.Ct.App.1998); *Baker v. Midland–Ross Corp.*, 508 N.E.2d 32, 37 (Ind.Ct.App.1987), *trans. denied.* When evidence is presented that does not conform to the pleadings, the party opposing the evidence must object or the issue supported by the evidence will impliedly be consented to having been tried by that party. *Schoemer*, 693 N.E.2d at 1340. Nevertheless, the broad ability to amend pleadings is not without boundaries. *Svetich v. Svetich*, 425 N.E.2d 191, 194 (Ind. Ct.App.1981). A party is entitled to some notice that an issue is before the court before it will be determined to have been tried by consent. *Id.; Aldon Builders, Inc. v. Kurland*, 152 Ind.App. 570, 580, 284 N.E.2d 826, 832 (1972). Both parties must actually litigate the new issue. *Id.* A new issue may not be interjected under the pretense that the evidence was relevant to some properly pleaded matter. *Schoemer*, 693 N.E.2d at 1340; *Aldon Builders*, 152 Ind.App. at 580, 284 N.E.2d at 832.

In the present case, Mother never moved to amend her pleadings to request relief from judgment with respect to the 1991 child support order. As set out in the *FACTS*, Father repeatedly objected to evidence pertaining to the 1991 proceedings on the basis that Mother had requested that only the 1994 order be set aside.[6] We interpret Mother's responses to Fa-

ther's objections at trial as arguments that the evidence of the 1991 fraud was relevant to her request for relief from the 1994 child support order. As noted above, a new issue cannot be interjected under the pretense that the evidence was relevant to some properly pleaded matter. *See Schoemer*, 693 N.E.2d at 1340.

■■■ Under the present circumstances, we must conclude that the issue of whether relief should be afforded from the 1991 child support order was outside the pleadings and was not tried by consent. *See Svetich*, 425 N.E.2d at 194 (holding that trial court erred by ordering father to pay arrearages where the matter was not pleaded nor tried by consent). Therefore, we must reverse the portion of the trial court's judgment related to its grant of relief from the 1991 child support order. Moreover, for the reasons set forth in section II above, we note that Mother would not be entitled to relief from judgment under the theory of fraud even if such claim was properly pleaded or tried by consent.

## IV. Determination of the Present Child Support Order

Father next asserts that the trial court erred in deriving his income from the expenses he reported. Father also claims that the trial court erred by treating the social security death benefits received by each household inconsistently. As noted above, the trial court set Mother's income

---

6. In her brief, Mother asserts that Father failed to object to Mother's request to review the child support order from 1991 forward, citing page 291 in the record. (Appellee's brief at 9). On page 291, the following direct examination of Mother took place:

Q: [Mother], are you asking the Court to set aside the 1994 order concerning child support—at least that part?
A: Not '91?
Q: Let's start with '94. Are you asking the Court to set aside and to re-calculate the support pursuant to our exhibits?
A: '94 ... yes, ma'am.
Q: And are you asking the Court to take into consideration [Father's] past conduct

in awarding both attorneys fees and in reviewing the child support from '91 on?
A: Yes, ma'am.
We cannot interpret this testimony as a request that the trial court set aside the 1991 child support order and order Father to pay an amount of child support he would have been required to pay had he not misrepresented his income during those proceedings. Thus, as discussed above, considering that Father repeatedly objected to the litigation of the 1991 order, we cannot conclude that Father's failure to lodge an objection at this point supports Mother's contention that the matter was waived or tried by consent.

at the amount she received on behalf of herself and the child but did not include the amounts she received with respect to her two subsequent children. On the other hand, all of the social security benefits that Father's household received on the behalf of Father's adopted child were, in effect, included in the determination of his income (based on the report of his expenses).

### A. Determination of Child Support— Standard of Review

The income shares model set forth in the Indiana Child Support Guidelines apportions the cost of children between the parents according to their means, and is based on the premise that children should receive the same portion of parental income after a dissolution that they would have received if the family remained intact. *Jendreas v. Jendreas,* 664 N.E.2d 367, 372 (Ind.Ct.App.1996), *trans. denied.* A trial court's calculation of a child support obligation under the child support guidelines is presumptively valid. *Marmaduke v. Marmaduke,* 640 N.E.2d 441, 443 (Ind.Ct.App.1994), *trans. denied.* Reversal of a trial court's child support order is merited only where the determination is clearly against the logic and effect of the facts and circumstances. *Kinsey v. Kinsey,* 640 N.E.2d 42, 43 (Ind. 1994). On the appellate review of a child support order, weight and credibility issues are disregarded and only the evidence and reasonable inferences favorable to the judgment are considered. *Id.* at 43–44. Judges are advised to avoid the pitfall of blind adherence to the computation of support without giving careful consideration to the variables that require changing the result in order to do justice. *Id.*

### B. Income for the Purpose of Calculating Child Support Under the Guidelines

For the purposes of determining the parents' income in the child support guideline calculation, the definition of "weekly gross income" is broadly defined to include not only actual income from employment, but also potential income and imputed income from "in-kind" benefits. *Matter of Paternity of C.L.H.,* 689 N.E.2d 456, 458 (Ind.Ct.App.1997), *trans. denied.* The trial court enjoys wide discretion in imputing income to the child support obligor to ensure that he does not evade his support obligation. *Homsher v. Homsher,* 678 N.E.2d 1159, 1164 (Ind.Ct.App.1997). Indiana Child Support Guideline 3(A) reads as follows:

> *Definition of Weekly Gross Income (Line 1 of Worksheet).* For purposes of these Guidelines, 'weekly gross income' is defined as actual weekly gross income of the parent if employed to full capacity, potential income if unemployed or underemployed, and imputed income based upon 'in-kind' benefits. Weekly gross income of each parent includes income from any source, except as excluded below, and includes, but is not limited to, income from salaries, wages, commissions, bonuses, overtime, partnership distributions, dividends, severance pay, pensions, interest, trust income, annuities, capital gains, *social security benefits,* workmen's compensation benefits, unemployment insurance benefits, disability insurance benefits, gifts, prizes, and alimony or maintenance *received from other marriages.* Specifically excluded are benefits from means-tested public assistance programs, including, but not limited to Temporary Aid To Needy Families (TANF), Supplemental Security Income, and Food Stamps.

(emphasis added).

### C. Analysis

As discussed above, Father's verified financial declaration stated that he earned only $400.00 per week. Yet, he reported expenses totaling $1,065.00 per week. Considering Father's history of under representing his income and the large discrepancy between his reported income

and his expenses, we cannot conclude that the trial court abused its discretion in imputing income to Father based on his reported expenses.

■ However, in the present case, the trial court set Mother's income at the amount of social security benefits she received on behalf of herself and Father's child, and excluded the benefits received on behalf of Mother's other two children. We hold that, under the broad definition of "weekly gross income" prescribed by Child Supp.G. 3(A), the total amount of social security benefits Mother received should have been included in the determination of her income. *See Matter of Paternity of C.L.H.*, 689 N.E.2d at 458–59 (holding that trial court erred in excluding Father's increased veterans' disability benefit in the determination of "gross income" for the purposes of calculating child support even if the increased benefit was directly related to his medical treatment because the benefit was not "means-tested public assistance" excluded from the guideline definition). Moreover, the inclusion of these benefits in the calculation of Mother's income is appropriate to ensure that her income is calculated consistently with Father's.[7]

Accordingly, we will recompute Father's child support obligation under the guidelines substituting the total benefits Mother receives as her income and leaving all other variables or inputs employed by the trial court the same. As noted above, Mother receives $25,668.00 on behalf of her three children per year or $493.62 per week ($25,668.00 ÷ 52 weeks = $493.62 per week). This amount, $493.62, reduced by the two subsequent children factor of .903 equals $445.73 per week. Child Supp. G. 3(A) (commentary). Father's weekly

income of $1,065.00 reduced by the one subsequent child factor of .935 equals $995.78. *Id.* Thus, the Weekly Adjusted Income, line 1(E) of the worksheet totals $1,441.51 ($445.73 + $995.78). Father's income represents 69% of this total ($995.78/$1,441.51 = .69) and Mother's income represents the corresponding 31% ($445.73/$1,441.51 = .31) as per line 2 of the worksheet. The Basic Child Support Obligation, line 4 of the worksheet, taken from the Support Schedules for the parents' combined income of $1,441.51 is $203.00 per week. This amount, $203.00, plus the weekly health insurance premium of $24.00, produces a Total Child Support Obligation, line 5 of the worksheet, in the amount of $227.00 per week ($203.00 + $24.00). Father's 69% share of this amount is $156.63 per week (line 6 of the worksheet). This amount, $156.63, reduced by the 10% credit for the exercise of regular visitation results in Father's child support obligation of $141.00 ($156.63 − 10%), line 8 of the worksheet.

■ This $141.00 per week obligation produced by the application of the guidelines is $5.00 less than the $146.00 per week amount entered by the trial court. We hold that, under the present circumstances where remand is required for another matter, the $5.00 per week deviation is significant enough to warrant appellate relief. Therefore, we reverse and remand with instructions that the trial court set Father's child support obligation at the guideline amount of $141.00 per week; or, if the trial court determines that the guideline amount is unjust or inappropriate, the trial court may enter an amount reasonable for the support of the child along with findings articulating the factual circumstances supporting that conclusion.[8] *See*

7. We need not decide whether the result here would have been different had Father not adopted his Wife's child.

8. Our recalculation requires that the calculation of the six percent component for ordinary health care expenses, as made by the trial court in the present case pursuant to the

guidelines, be adjusted as well. *See* Child Supp. G. 3 H.; *Truman v. Truman*, 642 N.E.2d 230, 238 (Ind.Ct.App.1994). Accordingly, the Basic Child Support Obligation of $203.00 per week multiplied by 52 weeks, multiplied by 6%, yields the amount of $633.36 per year of uninsured ordinary health care expenses Mother must absorb. After

Child Supp.R. 3; Child Supp.G. 1 (commentary); *Kinsey,* 640 N.E.2d at 44.

## V. Allocation of Income Tax Exemption

Father additionally contends that the trial court abused its discretion in allocating the income tax exemption to Mother because she does not work outside the home and thus, Father would save more in taxes from the exemption. *See Lamon v. Lamon,* 611 N.E.2d 154, 159 (Ind.Ct.App. 1993) (noting that the goal of allocating the dependency exemption is to maximize the amount of support available for the child).

▇ The trial court has the discretionary authority to order the custodial parent to sign a waiver of her presumed right to claim a child as dependent for income tax purposes. *In re Paternity of H.M.H. by Massey v. Hull,* 691 N.E.2d 1308, 1309 (Ind.Ct.App.1998). Indiana Child Support Guideline 6 reads as follows:

> In determining when to order a release of exemptions, it is recommended that at minimum the following facts be considered:
>
> (1) the value of the exemption at the marginal tax rate of each parent;
>
> (2) the income of each parent;
>
> (3) the age of the child(ren) and how long the exemption will be available;
>
> (4) the percentage of the cost of supporting the child(ren) borne by each parent; and
>
> (5) the financial burden assumed by each parent under the property settlement in the case.

▇ In the present case, the trial court concluded that the exemption should be allocated to Mother because she planned to remarry and the exemption would serve to reduce the tax liability in Mother's household incurred as a result of her husband's income. R. at 310. Under these circumstances, we cannot conclude that the trial

court's allocation of the dependency exemption to Mother was against the logic and effect of the facts and circumstances. Therefore, we find no error.

## VI. Attorney Fees

Finally, Father contends that the trial court's decision to require him to pay all of Mother's reasonable attorney's fees in the amount of $6,400.00 was against the logic and effect of the facts and circumstances. Specifically, Father argues that the evidence fails to support the trial court's conclusion that he earns substantially more than Mother. Again, Father attacks the trial court's imputation of his income from his reported expenses. Additionally, Father again argues that the evidence fails to support the conclusion that he committed fraud.

▇ The divorce court may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding in connection with the marriage dissolution. IND.CODE § 31–15–10–1; *Beeson v. Christian,* 594 N.E.2d 441, 443 (Ind.1992). When reviewing an award of attorney's fees in connection with a dissolution action, we reverse the trial court only for an abuse of discretion. *In re Marriage of Pulley,* 652 N.E.2d 528, 532 (Ind.Ct.App.1995), *trans. denied.* In making an award of attorney's fees, the court must consider the parties' relative resources, ability to engage in gainful employment, and ability to earn an adequate income. *Id.* Misconduct that directly results in additional litigation expenses may properly be taken into account in the trial court's decision to award attorney fees in dissolution proceedings. *R.E.G. v. L.M.G.,* 571 N.E.2d 298, 306 (Ind.Ct.App.1991). Since the trial judge is considered to be an expert on the question and may judicially know what constitutes a reasonable attorney's fee, the trial court is not bound to accept the evidence present-

that amount is reached, Father will pay 69% of any other uninsured health care expenses.

*See id.*

ed as to the reasonable value of an attorney's services. *Canaday v. Canaday,* 467 N.E.2d 783, 785 (Ind.Ct.App.1984).

■ As discussed above, we have approved the trial court's methodology in determining Father's income from his expenses under the circumstances presented here. Also, the record amply supports the trial court's conclusion that a great deal of litigation expenses has been incurred as the direct result of Father's consistent misconduct in falsely verifying his income. In light of these circumstances, we cannot conclude that the trial court abused its discretion by requiring Father to pay the reasonable attorney's fees incurred by Mother in the amount of $6,400.00.

### CONCLUSION

We reverse and remand with instructions that the trial court vacate the portions of its judgment relating to the relief afforded with respect to the 1994 and 1991 child support orders. We also reverse and remand the present child support order with instructions as outlined in section IV. In all other respects, we affirm.

Judgment affirmed in part and reversed and remanded in part.

MATTINGLY, J., concurs.

BAILEY, J., dissents with opinion.

BAILEY, Judge, dissenting

While I agree with the balance of the majority's opinion, I respectfully dissent from that portion of the holding which reverses the trial court's decision to set aside its 1994 child support modification.

### A. Child Support—General Considerations

At the onset I note that the well-established public policy, advanced by all three branches of Indiana government, is the protection of the welfare of children. *See Straub v. B.M.T. by Todd,* 645 N.E.2d 597, 599 (Ind.1994). The paramount concern of the Indiana Court of Appeals in any case involving child support must be focused on the best interests of the child. *Whitman v. Whitman,* 405 N.E.2d 608, 613 (Ind.Ct. App.1980); *Beehler v. Beehler,* 693 N.E.2d 638, 640 (Ind.Ct.App.1998). As the trial court is obligated to ensure that the best interests of children be advanced, the trial court is afforded broad discretion in fashioning orders designed to ensure that child support be paid. *Porter v. Porter,* 526 N.E.2d 219, 227–28 (Ind.Ct.App.1988).

A parent has the common law duty to support his minor child—even without any court decree or order having been entered. *Crowe v. Crowe,* 247 Ind. 51, 211 N.E.2d 164, 166 (1965) (noting that the first duty of a divorced parent is to support his child). The matter of child support should not be looked upon as a game between divorced parents who are in disagreement. *Id.; see also Hunt v. Hunt,* 465 N.E.2d 203, 207 (Ind.Ct.App.1984). The duty of support is continuous and neither a statute of limitation nor bankruptcy proceeding will relieve a parent from his obligation to pay support. *Hunt,* 465 N.E.2d at 207. Finally, the right to child support lies exclusively with the child, and a parent merely holds child support payments in trust for the benefit of the child. *Straub,* 645 N.E.2d at 599; *Hamiter v. Torrence,* 717 N.E.2d 1249, 1255 (Ind.Ct.App.1999).

### B. Relief from Judgment— Standard of Review

The trial court has broad equitable discretion to grant relief from its own judgment in order to effect the interests of justice. *Giles v. Giles,* 652 N.E.2d 115, 117 (Ind.Ct.App.1995). In deciding whether to grant equitable relief from judgment, the trial court must balance the alleged injustice suffered by the party moving for relief against the interest of the winning party and society in general in the finality of litigation. *Id.* at 116. Moreover, a court has inherent equitable jurisdiction to grant relief from a judgment obtained by fraud. *See In re Marriage of M.E.,* 622 N.E.2d 578, 581 (Ind.Ct.App.1993); 49

C.J.S. § 466 at 629–30. Such equitable jurisdiction provides the trial court with flexibility in fashioning relief. *See id.* The review of the trial court's grant of relief from judgment is limited to a determination of whether the trial court abused its equitable discretion. *See id.*

### C. An Exception—Intrinsic Fraud Constituting a Breach of a Fiduciary Duty

While I generally agree with the majority's three enumerated methods of attacking a judgment on the basis of fraud (*see* Majority opinion at 9), I believe the majority's analysis fails to account for an applicable exception, namely intrinsic fraud that constitutes a breach of a fiduciary duty.

Some courts have held that, where the fraud involves the breach of a fiduciary duty or violation of a confidential relationship, even an intrinsic fraud will constitute a sufficient basis to warrant relief from judgment. *Beirne v. Barone,* 529 A.2d 154, 157–58 (R.I.1987) (noting that the existence of a fiduciary relationship obliterates the distinction between extrinsic and intrinsic fraud); *In re Enger's Will,* 225 Minn. 229, 30 N.W.2d 694, 701–02 (1948) (noting that the rule is different in cases involving a fiduciary relationship than in ordinary litigation where the parties are adversarial); *In re Sullivan's Estate,* 51 Ariz. 483, 78 P.2d 132, 137 (1938) (holding that if the fiduciary personally profits by his own fraudulent conduct, such conduct will justify a court of equity intervening whether the fraud be considered extrinsic or intrinsic); 47 AM.JUR.2D at 396. Additionally, some commentators and courts have criticized the intrinsic-extrinsic distinction because the label to be applied to a particular fraud often turns on rather formal or artificial factors, regardless of the basic fairness of the adjudication and the worthiness of the motion for relief from judgment. *See Pepper v. Zions First Nat. Bank, N.A.,* 801 P.2d 144, 148 (Utah 1990); HARVEY, at 181; 47 AM.JUR.2D § 929 at 396.

### D. Breach of a Fiduciary Duty— Constructive Fraud

Where a relationship of trust and confidence exists, equity will act to protect the relationship by preventing the party owing the duty from profiting by its breach of the confidential relationship. *Peoples Trust Bank v. Braun,* 443 N.E.2d 875, 879 (Ind. Ct.App.1983). Equity will not permit a person to retain the benefits of a fraud. *Moore v. Fletcher,* 136 Ind.App. 478, 197 N.E.2d 183, 184 (1964). The law will declare a breach of an equitable or legal duty to be fraudulent where it violates the public interest or a public or private confidence. *Blaising v. Mills,* 176 Ind.App. 141, 374 N.E.2d 1166, 1169 (1978). A constructive fraud will be found upon the breach of a fiduciary duty coupled with an unjust enrichment which shocks the conscience. *Voelkel v. Tohulka,* 236 Ind. 588, 141 N.E.2d 344, 349 (1957). Moreover, Indiana case law has long recognized the relation between parent and child as akin to that of a fiduciary relationship. *See Indiana Trust Co. v. Byram,* 36 Ind.App. 6, 73 N.E. 1094 (1905); *Taylor v. Calvert,* 138 Ind. 67, 37 N.E. 531 (1894); *Goodbar v. Lidikay,* 136 Ind. 1, 35 N.E. 691 (1893) (each holding that parent and child, guardian and ward, principal and agent, are equally fiduciary relations, and equally require the application of the doctrine).

### E. Analysis and Conclusion

The paramount concern in this controversy, involving child support, is the best interests of the child. *See Straub,* 645 N.E.2d at 599; *Whitman,* 405 N.E.2d at 613; *Beehler,* 693 N.E.2d at 640. Every parent has a continuous, common law duty to support his minor child. *See Crowe,* 211 N.E.2d at 166; *Hunt,* 465 N.E.2d at 207. Moreover, our court has recognized that the litigation of child support should not be looked upon as a game or an adversarial contest between divorced parents (*id.*), and that the right to child support lies exclusively with the child. *See Straub,* 645

N.E.2d at 599. Here, Father's control over the monies received by his child, and the requisite protection of children's welfare committed to by all three branches of our state government dictate that I not overlook equity to protect finality.

I conclude that Father's duty to provide support to his child is comparable to the duty owed by a fiduciary to his principal. Thus, Father's false verification of his income during proceedings to set his child support constituted a breach of duty akin to the gravity of those breaches committed by fiduciaries in the above cited cases of *Beirne v. Barone,* 529 A.2d at 157–58, *In re Enger's Will,* 30 N.W.2d at 701–02, and *In re Sullivan's Estate,* 51 Ariz. 483, 78 P.2d 132 (1938). Consequently, I conclude that the trial court did not abuse its equitable discretion by affording relief from the 1994 judgment outside the one year limit imposed by T.R. 60(B)(3).

For all of the foregoing reasons I must respectfully dissent.