# FOR PUBLICATION



FILED
Sep 23 2014, 10:13 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**SHANA D. LEVINSON**
Levinson & Levinson
Merrillville, Indiana

ATTORNEY FOR APPELLEE:

**LYNN HAMMOND**
Law Office of Lynn Hammond
Valparaiso, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JAMES BOGNER, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | No. 45A04-1310-DR-505 |
| | ) | |
| TERESA BOGNER, | ) | |
| | ) | |
| Appellee. | ) | |

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Elizabeth F. Tavitas, Special Judge
Cause No. 45D03-0808-DR-796

**September 23, 2014**

**OPINION – FOR PUBLICATION**

**PYLE, Judge**

Appellant/Father, James P. Bogner ("Father"), appeals the trial court's modification of his child support obligations for his minor child, H.B. Father filed a petition to modify child support requesting the trial court to reduce his child support payments to his former wife, Teresa Bogner ("Mother"), from $135 per week to the $59 per week amount recommended by the Indiana Child Support Guidelines. He argued that this amount was appropriate because H.B. no longer required support for childcare. The trial court found that the Child Support Guidelines created an unfair result and, instead, modified Father's child support obligation to $105 per week and eliminated Father's right to claim H.B. as a dependent on his taxes every other year. Father appealed, arguing that the facts did not support a deviation from the Child Support Guidelines and that the trial court abused its discretion when it modified Father's tax exemption without assessing his tax records. We determine that the trial court's conclusions were erroneous based on its oversight of Father's financial support of H.B. during his overnight visits with her, and accordingly, the trial court abused its discretion in deviating from the amount the Child Support Guidelines recommended. We also conclude that the trial court abused its discretion in modifying Father's tax exemption absent any evidence of its financial ramifications.

We reverse and remand with instructions.

## ISSUES

1) Whether the trial court abused its discretion in modifying Father's child support obligation.

2) Whether the trial court abused its discretion in modifying Father's right to claim H.B. as a dependent on his taxes every other year.

## FACTS

Mother and Father (collectively, "the Parents") married on August 17, 2002. They had one child together, H.B., who was born in January 2005. On March 19, 2007, when H.B. was two years old, the Parents dissolved their marriage.

Pursuant to the dissolution of the Parents' marriage, the trial court ordered Father to pay $162 per week in child support and allowed the Parents to alternate claiming H.B. as a dependent every other year for tax purposes.[1] Subsequently, on October 19, 2007, Mother agreed to allow Father to have an additional 78 overnight visits with H.B. per year, which meant that Father had a total of 158 overnights per year. However, Father's child support obligation remained at $162 per week.

On June 10, 2009, the Parents agreed to modify Father's child support obligation to $135 per week based on the Parents' child support worksheet and in light of a substantial and continuing change of circumstances.[2] Mother agreed to pay the first annual $750 in annual reasonable and necessary uninsured health expenses for H.B., after which Mother would pay forty percent (40%) of any remaining and necessary uninsured health costs, and Father would pay sixty percent (60%).

At the time of this modification, H.B. required daycare, which cost $135 per week. Father paid sixty percent (60%) of this amount, which totaled $81 per week. In the June

---

[1] It is not clear whether this was a provision in the Parents' dissolution decree, which is not a part of the record, but both parties agree to these facts.

[2] These circumstances are not clear from the record.

3

10, 2009 support agreement, the Parents recognized that H.B. was about to enter kindergarten, which would alter her childcare costs. As a result, the trial court set the matter to be reviewed the next year when H.B. entered kindergarten, and the Parents "waive[d] any requirement that there be a [twenty percent] 20% deviation" between Father's $135 per week support requirement and any subsequent change of circumstances related to daycare. (Father's App. 20).

In late 2011, Father, his current wife, and their child moved to Valparaiso, Indiana to live closer to H.B. Due to this move, Father was able to unofficially increase his parenting time. In addition to his previously-established overnights with H.B., he also began assisting Mother by taking care of H.B. before and after school three days a week on Mother's parenting days. On these days, he provided H.B. with breakfast and dinner, even though he was not required to do so by their child support agreement. He also supplied H.B. with clothing so that she did not have to bring any clothes with her when she traveled between the Parents' houses. As a result of this arrangement, H.B. did not require childcare before and after school. Still, Father continued to pay Mother $135 per week in child support for the following two years.

On July 9, 2013, Father filed a Petition to Modify Child Support, requesting that the trial court modify his child support requirements to reflect the decrease in childcare costs. At that time, Father's weekly income amounted to $1,236 per week, and Mother's income amounted to $926 per week. The Parents agreed to use 141-145 overnights per year as a basis for calculating Father's parenting time credit, and they also agreed that neither of them incurred daycare expenses for H.B. Father did not seek to claim credit

4

for the two to three days per week that he took care of H.B. before and after school. The Parents completed a joint child support worksheet and agreed that, based on their respective incomes and Father's credits for his child with his second wife and overnight visitation, the child support worksheet recommended that Father pay $59 per week in support.

On September 9, 2013, the trial court held a hearing on Father's petition. At the hearing, the Parents submitted the joint worksheet as an exhibit. Father argued that the trial court should modify his child support obligation to the amount the worksheet recommended—$59 per week. Mother acknowledged that the worksheet recommended $59 in support, but argued that $59 was unjust in light of Father's tax credits—which she alleged amounted to $3,800 per year—and the fact that she might have to theoretically pay H.B.'s uninsured medical expenses. As a result, Mother argued that the trial court should deviate from the worksheet's recommendations. The trial court agreed and, instead of the worksheet's recommended amount of $59, modified Father's child support obligation to $105 per week. The court concluded that:

> Common sense speaks to the outcome here to be unjust and unreasonable when applying all of Father's credits; Eighty ($80.00) Dollars from gross income for subsequent child; while Father pays Fifty-Nine ($59.00) Dollars per week for child, Mother has the child with her 220-230 nights per year, she has fixed expenses and pursuant to the Child Support Worksheet, she would pay 69% or Eight Hundred Dollars per week from Father[.] Mother is paying Two Hundred Thirteen (213.00) Dollars per week of the basic support. . . . Mother is paying One Hundred Twenty Dollars and 99/100 ($120.99) per week for the child[,] which equals Six Thousand Two Hundred Ninety-One Dollars and 48/100 ($6,291.48) per year; Father is paying Fifty-Nine ($59.00) Dollars [] per week[, which] equals Three Thousand Sixty-Eight ($3,068.00) Dollars per year.

(Father's App. 11-12). Father now appeals the trial court's modification. We will provide additional facts as necessary.

DECISION

On appeal, Father disputes the trial court's findings of fact concerning the Parents' respective child support payments and the trial court's conclusion that calculation of Father's child support through the Child Support Worksheet led to unjust results. He also argues that the trial court abused its discretion when it eliminated Father's right to claim H.B. as a dependent child on his taxes every other year. We will address each of these arguments in turn. However, first we must note that when we review a modification of child support, we will reverse the trial court's decision only for an abuse of discretion. *Cross v. Cross*, 891 N.E.2d 635, 641 (Ind. Ct. App. 2008). We review the evidence most favorable to the judgment without reweighing the evidence or reassessing the credibility of witnesses. *Id.* An abuse of discretion occurs when the decision is clearly against the logic and effect of the facts and circumstances before the court, including any reasonable inferences therefrom. *Id.*

1. Child Support

In 1989, our Supreme Court adopted the Child Support Guidelines to "'facilitate adequate support awards for children, to make awards more equitable by ensuring consistent treatment of persons in similar circumstances, and to improve the efficiency of the process of determining support.'" *Eppler v. Eppler*, 837 N.E.2d 167, 174 (Ind. Ct. App. 2005) (quoting *Garrod v. Garrod*, 655 N.E.2d 336, 338 (Ind. 1995)). Our Supreme Court has advised that achieving these ends does not require treating the Guidelines as

6

"immutable, black letter law." *Garrod*, 655 N.E.2d at 338. There are situations that "call for flexibility[,] and courts should avoid the pitfall of blind adherence to the [Guidelines'] computation for support without giving careful consideration to the variables that require changing the result in order to do justice" in such circumstances. *Id.* Deviation is proper if strict application of the Guidelines would be "unreasonable, unjust, or inappropriate." *Id.*

The Guidelines set forth an income shares model that apportions the cost of children between the parents according to their means and based on the premise that children should receive the same portion of parental income after a dissolution that they would have received if the family had remained intact. *Glover v. Torrence*, 723 N.E.2d 924,936 (Ind. Ct. App. 2000). A trial court's calculation of a child support obligation under the Child Support Guidelines is presumptively valid. *Id.* Reversal is merited only where the determination is clearly against the logic and effect of the facts and circumstances. *Id.* We will not reweigh the evidence or judge the credibility of witnesses, and we will consider only the evidence and reasonable inferences favorable to the trial court's judgment. *Id.*

When a trial court has entered findings of fact and conclusions thereon pursuant to Indiana Trial Rule 52(A), as the trial court did here, we must assess whether the trial court's findings are sufficient to support its conclusion. *Weiss*, 693 N.E.2d at 590. We will first determine whether the evidence supports the findings and, second, whether the findings support the judgment. *Id.*

7

Father disputes five of the trial court's findings of fact and argues that, because these findings were incorrect, the trial court's conclusion that the child support worksheet created an unjust result was erroneous. We need not address each of Father's specific arguments regarding the trial court's findings, because we agree that the trial court's conclusions, including its interpretations of the child support worksheet, were clearly erroneous.

The trial court concluded:

> Common sense speaks to the outcome here to be unjust and unreasonable when applying all of Father's credits; Eighty ($80.00) Dollars from gross income for subsequent child; while Father pays Fifty-Nine ($59.00) Dollars per week for child, Mother has the child with her 220-230 nights per year, she has fixed expenses and pursuant to the Child Support Worksheet, she would pay 69% or Eight Hundred Dollars per week from Father[.] Mother is paying Two Hundred Thirteen (213.00) Dollars per week of the basic support. . . . Mother is paying One Hundred Twenty Dollars and 99/100 ($120.99) per week for the child[,] which equals Six Thousand Two Hundred Ninety-One Dollars and 48/100 ($6,291.48) per year; Father is paying Fifty-Nine ($59.00) Dollars [] per week[, which] equals Three Thousand Sixty-Eight ($3,068.00) Dollars per year.

(Father's App. 11-12). Essentially, the trial court determined that if Father were ordered to pay fifty-nine dollars ($59) per week in support to Mother as Father requested, he would only be paying fifty-nine dollars ($59) towards H.B.'s care. As the evidence demonstrated, that was not the case.

First, we must note that, as Father argues, the trial court appears to contradict itself in these conclusions. At one point, the trial court states that Mother is paying $213 per week in support, and then the trial court states that Mother is paying $120.99 per week in support. However, disregarding these *prima facie* errors, the primary flaw in the trial

8

court's reasoning is that it misinterpreted Father's parenting time credit for his overnight visits. Based on a proper understanding of parenting time credit for overnight visits, it is clear that implementation of the child support worksheet's $59 recommended support would not create an unjust result.

The rationale behind parenting time credit is that overnight visits with the noncustodial parent "may alter some of the financial burden of the custodial and noncustodial parents in caring for the children." *Young v. Young*, 891 N.E.2d 1045, 1048 (Ind. 2008). Accordingly, the Child Support Guidelines contain a formula for calculating parenting time credit based upon the total number of "overnights" per year that a noncustodial parent spends with the children. *Id.*; Child Supp. G. 6 Table PT. The commentary to the Guidelines clarifies that credit for overnight visits is dependent upon the non-custodial parent's financial support of the child overnight. It states:

> [a]n overnight will not always translate into a twenty-four hour block of time with all of the attendant costs and responsibilities. It should include, however, the costs of feeding and transporting the child, attending to school work and the like. Merely providing a child with a place to sleep in order to obtain a credit is prohibited.

*Id.*; Child Supp. G. 6 cmt.

Here, the Parents agreed on all of the basic numerical amounts to include on their child support worksheet. They agreed to their incomes; they agreed that, based on the Child Support Guidelines' support schedules, H.B.'s care and support should cost approximately $272 per week; and they also agreed that Father was entitled to a $92.19 credit for his 141-145 overnight visits with H.B. As stated above, this $92.19 credit was equivalent to a finding that Father spent approximately $92.19 per week financially

9

supporting H.B.'s care during his overnight visits. As Father spends this amount every week, if he also pays Mother $59 in support every week, he will pay $151.19 towards H.B.'s care every week in total. Because the Guidelines calculate—and the Parents agree—H.B.'s care will only cost approximately $272 per week in total, Father would thus be paying for 55% of H.B.'s total care if he paid Mother $59 per week in support. With the child support obligation of $105 per week that the trial court ordered, Father is paying for 72.5% of H.B.'s care.

Based on these calculations, we conclude that the trial court abused its discretion when it held that the child support worksheet created an unjust result warranting a deviation from the worksheet. We remand for the trial court to modify Father's support obligations to $59, which is the amount that is presumptively correct based on the worksheet and the Guidelines.

2. Tax Exemption

Next, Father argues that the trial court abused its discretion when it eliminated his right to claim H.B. as a dependent on his taxes every other year. His primary argument is that there was no evidence in the record—other than Mother's self-serving testimony—concerning the income tax benefits to either parent of claiming H.B. as a dependent. We agree.

Federal law grants a dependency exemption to the custodial parent but allows that parent to execute a written waiver of the exemption to the non-custodial parent. *Carpenter v. Carpenter*, 891 N.E.2d 587, 596 (Ind. Ct. App. 2008). A trial court may also order a custodial parent to sign a waiver of the right to claim the child as a

dependent. *Id.* The Child Support Guidelines recommend that when a trial court is determining whether to order such a waiver, it should consider the following factors:

(1) the value of the exemption at the marginal tax rate of each parent;

(2) the income of each parent;

(3) the age of the child(ren) and how long the exemption will be available;

(4) the percentage of the cost of supporting the child(ren) borne by each parent;

(5) the financial aid benefit for post-secondary education for the child(ren); and

(6) the financial burden assumed by each parent under the property settlement in the case.

Child Supp. G. 9. Although the Guidelines are worded in permissive terms—"it is recommended that at a minimum the following factors be considered"—Indiana courts have held that a trial court *should* consider the factors. *Carpenter*, 891 N.E.2d at 596 (quoting Child Supp. G. 9). The trial court should also review tax exemption questions "on an individual basis" and make a decision "in the context of each case." Child Supp. G. 9. The court's equitable discretion should be guided by the goal of making the maximum amount of support available for the child. *Carpenter*, 891 N.E.2d at 596.

Here, the trial court did not indicate in its order that it considered any of the factors that it was required to consider under the Guidelines. In addition, the Parents did not submit any evidence from which the trial court could have considered many of the factors. There is evidence in the record concerning the Parents' respective incomes and the percentage of the cost of supporting H.B. that each Parent bears. Based on this

11

evidence, the trial court could have considered the second and fourth factors listed in the Guidelines, although there is no evidence it did so. Otherwise, neither party submitted previous tax returns nor any other evidence that would have helped the trial court consider the financial ramifications to H.B. of eliminating Father's tax exemption, other than Mother's self-serving testimony regarding the value of the exemption. Accordingly, we conclude that the trial court abused its discretion in modifying Father's exemption. We remand to the trial court to re-evaluate the issue of the Parents' tax exemption based on the factors listed in the Child Support Guidelines.

Reversed and remanded with instructions.

FRIEDLANDER, J., and MATHIAS, concur.