**In re the Matter of Brian R. SEBASTIAN, Appellant–Petitioner,**

**v.**

**Beth A. SEBASTIAN, Appellee–Respondent.**

No. 18A02–0301–CV–31.

Court of Appeals of Indiana.

Oct. 30, 2003.

Kelly N. Bryan, Muncie, IN, Attorneys for Appellant.

John Quirk, Muncie, IN, Attorney for Appellee.

## OPINION

ROBB, Judge.

Brian Sebastian ("Father") filed a Petition to Emancipate Child and Modify Support regarding his son Zachary. The trial court held a hearing, but heard no evidence, directing rather that the parties file affidavits with supporting documents. After both parties filed memoranda, the trial court issued an Order requiring Father to reimburse Beth Sebastian ("Mother") for college and living expenses and ordering Father to pay Mother's attorney fees. Father now appeals. We remand.

### Issues

Father raises two issues for our review which we restate as:

1. Whether there was sufficient evidence for the trial court's Order; and

2. Whether the trial court's Order was outside the scope of the pleadings.

### Facts and Procedural History

Father and Mother are the parents of two children, Zachary (date of birth 6/29/1978) and Kalee. Father and Mother's marriage was dissolved pursuant to a Decree of Dissolution of Marriage entered on June 9, 1994. Mother was awarded custody of the children.

Zachary graduated from high school in 1997 and attended Ivy Tech for two semesters to raise his grades to enter Ball State University. In an Order entered September 24, 1997, the trial court ordered that Mother and Father divide equally Zachary's tuition and book expenses at Ivy Tech provided that Zachary maintain a "C" average, remain a full-time student, and furnish his father with his grades upon their receipt.

Zachary attended Ball State University in the 1998–99 school year and earned a 1.459 grade point average. Because of his poor grades, Zachary was unable to register for classes for the Fall 1999 semester. Instead, Zachary was required to write an essay regarding how he would improve his grades if he were allowed to return to school. He returned to Ball State University for the Spring 2000 semester.

Over the course of the next three years, Father filed a number of petitions to emancipate Zachary in light of Zachary's poor academic achievement, lack of effort, and use of alcohol. The trial court held hearings on September 29, 1999, May 23, 2000, and January 17, 2001, regarding Father's petitions, but never answered the question of the impact Zachary's academic performance had on Father's contribution to Zachary's educational expenses.[1]

On September 7, 2001, Mother filed a Motion to Set Hearing stating that there were unresolved issues which needed to be addressed by the trial court.[2] On April 1, 2002, Father filed a Petition to Emancipate Child and Modify Support. The trial court set a hearing for April 25, 2002. However, the trial court heard no evidence, directing rather that the parties file affidavits with supporting documents. Following filings by both parties, the trial court issued an Order on November 15, 2002, stating that Zachary was emancipated as of November 13, 2001, based upon evidence regarding his life style, suspension of driver's license due to chemical test failure and his failure to provide Father with his expense bills and academic grades. Appellant's Appendix at 456. Additionally, the Order required Father to reimburse Mother for $27,322.98 for Zachary's college and living expenses and to pay Mother's attorney fees of $550.00. *Id.* at 456–58.

Zachary graduated from Ball State University at the end of the Spring 2002 semester. *Id.* at 447. He had a final cumulative grade point average of 2.464. *Id.* at 448.

This appeal ensued.[3] Additional facts will be provided as necessary.

1. The procedures followed by the trial court made this a very difficult case to review upon appeal. The trial court frequently took issues under advisement and did not make rulings at all or made rulings months or years after the issues were first raised which made it very difficult for us on review to determine when the issues were ruled upon and when the rulings were effected. Additionally, the trial court allowed both parties to file multiple continuances. For example, Mother's response to Father's Memorandum filed pursuant to the April 25, 2002, Order, was due May 21, 2002 (fifteen days after Father filed his Memorandum). However, the trial court granted several continuances and Mother filed her Memorandum in response on September 6, 2002. Additionally, the trial court frequently set dates for hearings and then reset the dates again and again. For example, the hearing on Mother's September 7, 2001, Motion to Set Hearing was originally set for October 30, 2001. It was reset for November 29, 2001, January 31, 2002, and finally April 25, 2002. These are but two examples of the trial court allowing the parties to delay this case. While we understand that there are sometimes reasons for delay at the trial court level, in a case where the trial court was to determine who paid for Zachary's educational expenses, it seems odd that the trial court was deciding in November 2002 (six months after Zachary had graduated from college) who was going to pay for the third through final semesters of Zachary's education. We recommend that the trial court attempt to limit the continuances so that cases where expenses need to be calculated by semester are not decided years after the fact. Had the trial court not taken as many issues under advisement and not allowed as many continuances, this case may have been easier to review upon appeal.

2. Mother did not state what the unresolved issues were in her motion.

3. We note that there were many earlier Orders issued in this case regarding the issues of emancipation, disability and expenses. As

*Discussion and Decision*

## I. Standard of Review

 Decisions regarding child support are generally left to the discretion of the trial court. *Gilbert v. Gilbert,* 777 N.E.2d 785, 790 (Ind.Ct.App.2002). Absent an abuse of discretion or a determination that is contrary to law, a court on appeal will not disturb a trial court's order modifying child support. *Id.* In reviewing orders modifying child support, we consider only the evidence and reasonable inferences favorable to the judgment. *Id.* When reviewing a challenge to an order apportioning college expenses, we apply a "clearly erroneous" standard. *Id.* We will affirm the trial court unless the decision is clearly against the logic and the effect of the facts and circumstances which were before it. *Id.*

## II. Sufficiency of the Evidence

Father contends that the trial court abused its discretion by relying upon Mother's unverified memorandum in drafting its Order. In its April 25, 2002, Order, the trial court stated that the parties did not wish to submit testimony at the hearing scheduled for that date and ordered the parties to file affidavits with supporting documents instead. Appellant's Appendix at 396. Father filed an unverified memorandum on May 6, 2002. Mother filed her unverified response on September 6, 2002. Father now challenges the procedure used by the trial court to determine the child support, arguing that the trial court should have required the parties to submit verified affidavits rather than unverified memoranda.

Father did not appeal any of the earlier Orders, we are not in a position to review or modify those Orders upon appeal. In the present case, we are considering only the November 15, 2002, Order, which was the

We find this argument baffling. Father filed his unverified memorandum first, so he had the opportunity to follow the procedure set out by the trial court by filing the proper verified affidavit. Rather, he chose to file an unverified memorandum. Following Father's lead, Mother also filed an unverified memorandum. The trial court allowed both parties to file unverified memoranda and issued its Order on November 15, 2002.

Mother cites *Trout v. Trout,* 638 N.E.2d 1306 (Ind.Ct.App.1994), *trans. denied,* for the proposition that a party cannot concede the format of a proceeding, await the result and then object on appeal. In *Trout,* the trial court had explained to the parties that the final hearing in the marriage dissolution was a summary proceeding and that counsel could summarize their client's testimony and their clients should then verify that the statements made in the summaries were correct. Neither party objected to this procedure used to expedite the proceeding. Only upon receiving the trial court's ruling did the husband file a motion to correct error challenging the proceeding. This court stated:

[A]ny challenges to the procedure utilized by the trial court were waived by Husband's failure to object to the format of the proceedings. A timely objection is a prerequisite to appellate review. "An appellant cannot sit idly by without objecting, await the outcome of trial, and thereafter raise an issue for the first time on appeal." Had Husband raised an objection to the format of the hearing, and the trial court nevertheless insisted on proceeding in this abbreviated manner, Husband might be entitled to relief. However that is not the case.

first time the trial court purported to calculate the arrearages owed by Father. Therefore, we are deciding whether this calculation is correct based on the language of the prior Orders.

Husband, through his silence, is held to have assented to proceeding in this irregular manner. Thus, he is entitled to no relief.

*Id.* at 1307–08 (citations omitted). Likewise, in the present case, Father waited for the trial court to issue its decision before voicing any argument that the procedure was incorrect.

The *Trout* court continued:

As to [Husband's] argument that the format used by the trial court did not comply with statutory procedures, the fact the proceeding was summary in nature did not transform it into a "summary dissolution decree" as contemplated by the Ind.Code 31–1–11.5–8(d) or (e). Likewise, the format of the proceeding did not miraculously transform it to a hearing on a motion for summary judgment under Trial R. 56. Thus, the failure to follow the statute or the rule does not invalidate the court's actions.

*Id.* at 1308.

■ As in *Trout*, Father waited until after the trial court issued its November 15, 2002, Order before appealing the issue of the unverified memoranda. Mother filed her memorandum more than two months prior to the Order being issued. Father had ample time to file a Motion to Strike, but he accepted Mother's filing knowing the court would rely on the evidence presented.

Also, as in *Trout*, Father contends that the procedure used by the trial court did not comply with the requirements of Trial Rules 43 and 56. However, based upon the reasoning in *Trout*, we find that this argument does not carry the day. Therefore, we hold that both parties have waived the issue of the unverified memorandum on appeal.

## III. Matters Outside the Pleadings

Father contends that the Order resolved more issues than either party intended through the pleadings. Specifically, Father contends that he was unaware that the trial court would determine his arrearage.

■ A party is entitled to advance notice that an issue is going to be tried and determined by a court. *Glover v. Torrence*, 723 N.E.2d 924, 935 (Ind.Ct.App. 2000). On April 25, 2002, the trial court ordered both parties to file affidavits with supporting documents on the issues of emancipation and disability. Father filed his memorandum on May 6, 2002, in which he included information relating to the calculation of arrearages. Mother then filed her memorandum on September 6, 2002, in which she included an entire breakdown of arrearage amounts and the total amount that she believed Father owed in arrearage. If Father believed that Mother's memorandum incorrectly included arrearage amounts, he should have objected to the memorandum before the trial court issued its November 15, 2002, Order. As stated above, a party is not allowed to wait for the trial court to issue its decision before voicing any objections. *See Trout*, 638 N.E.2d at 1307–08. Therefore, Father has waived this issue on appeal.

### A. Zachary's College Expenses

Child support payments may properly include expenses for the child's education under Indiana Code section 31–16–6–2:

The child support order or an educational support order may also include, where appropriate:

(1) amounts for the child's education in elementary and secondary schools and at institutions of higher learning, taking into account:

(A) the child's aptitude and ability[.]

Ind.Code § 31–16–6–2(a)(1)(A).

To determine whether the trial court correctly relied on the pleadings and correctly determined Father's arrearage, it is necessary to examine the November 15, 2002, Order. The Order began by stating:

The Court, now being advised in the premises, and having reviewed the evidence and the pleadings, now finds that:

1. On January 1, 2001, both parties appeared, evidence was submitted, and an Order on Petition to Modify Contempt Citation was issued on February 7, 2001.

2. [Father] was previously ordered to pay 82% of Zachary's college expenses during full-time employment, and 44% of Zachary's college expenses while on medical leave.

. . .

4. [Father]'s Petition to Emancipate Child and Modify Support was filed on April 4, 2002, supported by [Father]'s Memorandum filed on May 6, 2002.

5. [Mother] submitted her Response to [Father]'s Memorandum on September 6, 2002.

6. Previously, the Court indicated by correspondence to counsel, [Father] would be required to pay attorney fees of $750.00 for [Mother]'s attorney as of April 25, 2002.

7. Zachary should be considered emancipated as of November 3, 2001, based upon evidence regarding his life style, suspension of drivers license due to chemical test failure, and his failure to submit college expense bills and academic grades (although substantially submitted by [Mother]'s counsel on September 6, 2002).

8. Zachary did incur college expenses, book fees, and rent, including utilities, during certain school semesters at Ball State University, which monthly expenses are as follows:

| | | |
|---|---|---|
| A. | Rent | $275.00 |
| B. | Utilities | 150.00 |
| C. | Books ($600.00 a year/12 months) | 50.00 |
| D. | Insurance (health and renters) | 35.00 |
| E. | Medical and Dental | 20.00 |
| F. | Parking Permits | 10.00 |
| G. | Computer and Internet Access | 60.00 |
| H. | Other expenses | 60.00 |
| | Total Monthly Living Expenses | $660.00 |

■ Appellant's Appendix at 456. Going through the calculation of Zachary's expenses in Item 8 line by line, we believe that certain amounts should not have been included. In its June 13, 2000, Order, the trial court determined that Father was not responsible for any future support payments because Zachary had reached the age of twenty-one. *Id.* at 226. However, such a determination was unnecessary. Zachary reached the age of twenty-one on June 29, 1999. By law, Father should not have been required to pay any child support for Zachary after that date. *See* Ind. Code § 31–16–6–6(a). Father is not required by law to return to court to have the court determine that Zachary turned twenty-one. The child support payments are terminated at age twenty-one, absent a few circumstances not present here. Although the court may have found him emancipated as of June 13, 2000, he was emancipated by operation of law on June 29, 1999. Therefore, any child support ordered by the trial court for the time period between June 29, 1999, and June 13, 2000, are void as a matter of law. The June 13, 2000, Order also stated that Zachary was not to be emancipated with regard to college education expenses due to the necessity of medical insurance.[4] Thus, the

---

4. We note that this is a non sequitur. If the goal of the court was to provide health insurance, the court could have done so without ordering college expenses. Likewise, the court could have ordered college expenses without a reference to insurance. The two

trial court erred in including any expense amounts after June 29, 1999, which may be properly considered support expenses rather than education expenses.

The expenses for rent, utilities, books, and renters insurance are valid educational expenses and should remain in the calculation as long as Zachary was not emancipated with regard to college education expenses. *See Warner v. Warner*, 725 N.E.2d 975, 978 (Ind.Ct.App.2000) ("The trial court must determine what constitutes educational expenses, and the guidelines state that these will generally include tuition, books, lab fees, supplies, student activity fees, and the like. Room and board are also included when the student lives away from the custodial parent during the school year.") (internal citations omitted).

Health insurance, however, should be removed from the calculation. As stated above, Mother and Father stipulated that Zachary was not emancipated for educational expenses because Zachary needed to remain on Father's health insurance.[5] If this is the case, it is unclear why Father was ordered to reimburse Zachary for health insurance expenses. If Zachary was providing his own health insurance, Father's reimbursement terminates at age twenty-one as it is in the nature of support and not in the nature of educational expenses. Therefore, we remand to the trial court to determine why Father was required to pay the health insurance amount and to determine whether that amount should have terminated at age twenty-one or whether the amount should not have been included in the expenses and amend its Order accordingly.

We assume the Medical and Dental in Line E of the Other Expenses refers to medical and dental expenses because the health insurance is encompassed by Line D. Any medical and dental expenses are part of support and terminate at age twenty-one. Although there is evidence that Father agreed to keep Zachary on his health insurance past age twenty-one, there is no evidence in the record that Father agreed to continue paying Zachary's medical and dental expenses past age twenty-one. As such, these expenses should terminate on June 29, 1999, when Zachary's support terminated and we remand for the trial court to amend its Order accordingly.

In its July 20, 1998, Order, the trial court stated that Zachary was to be responsible for his own food, clothing and vehicle.[6] However, the trial court included parking permits in its calculation of expenses. Parking permits are part of a vehicle's expenses and therefore, should not have been included in any calculation after July 20, 1998.

Also in the July 20, 1998, Order, the trial court stated that, at that time, Father was to pay $3,871.00 of the $4,721.00 Zachary owed for the Fall 1998 Spring 1999 school year at Ball State University. The $4,721.00 included a $540.00 computer expense for a nine month period. Mother

---

are not dependent on each other. However, Father did not appeal this earlier Order, so we cannot amend its requirements.

**5.** We note that the trial court could not have ordered health insurance to continue for Zachary after he turned twenty-one and was emancipated by law. *See Wittwer v. Wittwer*, 545 N.E.2d 27, 29 (Ind.Ct.App.1989) (holding that the trial court erred in ordering the ap-

pellant to pay educational expenses after the child's emancipation). However, the parties stipulated in the February 7, 2001, Order, that Father would continue to include Zachary in his health insurance coverage.

**6.** Zachary's responsibility for his own food, clothing and vehicle was also stated in the February 7, 2001, Order.

was required to pay the remaining $850.00 and the trial court stated that her $850.00 included the full cost of the $540.00 computer expense. However, in the November 15, 2002, Order, computer and internet access fees were included in Zachary's educational expenses.[7] Therefore, we remand for a finding on whether the $60.00 per month computer and internet access included on the expenses list and ordered on the November 15, 2002, Order, was the same fee and, if so, it was a fee which Mother was required to pay and requiring Father to pay that amount would be contrary to the terms of the July 20, 1998, Order.

Finally, the term "Other Expenses" is too amorphous for our review on appeal. Therefore, we remand for the trial court to make a specific finding of what the "Other Expenses" were, keeping in mind that Father is not to pay anything outside of educational expenses and is not to pay those expenses heretofore ordered as Zachary's responsibility.

Therefore, we remand to the trial court to determine which of these amounts were correctly included in the calculations and which need to be removed for a new calculation of the amount of arrearages owed by Father and to amend the November 15, 2002, Order accordingly.

### B. Father's Employment

The November 15, 2002, Order then continues:

9. [Father] remains employed at General Motors, having been hired on October 10, 1977, and his work history is as follows:

A. *October 10, 1977 to April 16, 2000,* [Father] worked full time with an hourly rate of pay from $20.12 to $21.00 per hour.

B. *April 17, 2000 to April 3, 2001,* [Father] was on medical leave with a weekly income of $490.00.

C. April 4, 2001 to December 16, 2001, [Father] worked full time with an hourly rate of pay from $22.11 to $22.77 per hour.

D. December 17, 2001 to July 25, 2002, [Father] was on medical leave with a weekly income of $490.00.

E. July 26, 2002 to present, [Father] is working full time with an hourly pay of $22.77 per hour.

*Id.* at 456. All of this information appears to be supported by the evidence and is not an abuse of discretion.

### C. Zachary's Educational Expenses

Indiana Code section 31–16–6–2(a) provides that an educational support order may include amounts for the child's education in institutions of higher learning. Educational support orders must take into account the child's aptitude and ability; the child's reasonable ability to contribute to educational expenses through work, loans, and obtaining other sources of financial aid reasonably available to the child and each parent; and the ability of each parent to meet these expenses. Ind.Code § 31–16–6–2(a). The trial court's decision concerning financial contributions to college endeavors will be affirmed unless the decision is clearly against the logic and effect of the facts and circumstances which were before it. *Gilbert,* 777 N.E.2d at 792–93. Although a parent is under absolutely no legal duty to provide a college education for his children, a court may nevertheless order a parent to pay part or

---

7. Zachary's prior $540.00 computer expense covered nine months which made it $60.00 per month. It is unclear from the record whether the $60.00 per month expense included in the November 15, 2002, Order is the same expense.

all of such costs when appropriate. *Id.* at 793.

The November 15, 2002, Order analyzes each of Zachary's semesters at school and determines the amount of money Father owes in arrearage. There is no question that the trial court determined that Father's responsibility for Zachary's college expenses extended beyond Zachary's twenty-first birthday. *See* Order Book Entry of June 13, 2000, Appellant's Appendix at 224–26.

### 1. Fall 1997—Spring 1998

Zachary spent his first year of college at Ivy Tech for the school year Fall 1997—Spring 1998. The trial court entered an Order on September 24, 1997, which required Father to pay one half of Zachary's tuition plus one half of his book expenses. This requirement was conditioned on Zachary maintaining a "C" average, remaining a full-time student, and reporting his grades to Father. The November 15, 2002, Order does not establish an arrearage for Father for the 1997–98 school year because such amount was determined in the September 24, 1997, Order and therefore, is not subject to review at this time.

### 2. Fall 1998—Spring 1999

Zachary transferred to Ball State University after his first year. On July 20, 1998, the trial court entered an Order requiring Father to pay eighty-two percent of Zachary's expenses at Ball State University. Finding that Zachary's expenses were $7,445.00 and that Zachary had credits of $2724.00, the trial court found that Zachary owed $4,721.00. Of that amount, the trial court ordered Father to pay $3,871.00 and Mother to pay $850.00 with Mother's amount including all of Zachary's $540.00 computer fee. This order also stated that Zachary was responsible for his own clothing, food, and vehicle. Neither party appealed this Order.

Regarding the 1998–99 school year, the November 15, 2002, Order stated:

A. 1998 Fall semester (August to December, 1998)
 [Father] employed full time and should pay according to July 20,
 1998 Order $3,871.00

B. 1999 Spring semester (January to May, 1999)
 [Father] employed full time and should pay according to July 20,
 1998 Order (see [Mother]'s Response to Memorandum, filed on
 September 6, 2002) .00 [8]

Appellant's Appendix at 457. Because these amounts were determined by the July 20, 1998 Order and Father did not appeal that Order, the trial court was within its discretion to rely on these amounts.[9]

### 3. Fall 1999—Spring 2000

During the 1998–99 school year—Zachary's first year at Ball State University—his grade point average dropped to a cumulative amount of 1.4. Transcript at 13. This is below the "C" average or a 2.00 grade point average. Because of his performance, Zachary was not allowed to enroll at Ball State University during the Fall 1999 semester. Rather, Zachary was required to write an essay on what he could do to improve himself before being reinstated as a student in the Spring 2000 semester.

---

8. This number is zero because, pursuant to the July 20, 1998, Order, the $3,871.00 covered the entire 1998–99 school year. *See* Appellant's Appendix at 139–40.

9. Zachary turned twenty-one on June 29, 1999.

Regarding the 1999–2000 school year, the November 15, 2002, Order stated:

 C. <u>1999 Fall semester</u> (August to December 1999) not in school

 D. <u>2000 Spring semester</u> (January to May, 2000)
 [Father]'s disability started 4–17–00, [Father] employed full time until May of 2000, [Father] ordered to pay 82% of $3,812.00 college and $3,125.84
 other expenses ($660.00 × 6 mo. × 82%) $3,247.20

*Id.* at 457.

Father filed a Petition to Modify Child Support and College Expenses on July 6, 1999, stating that Zachary failed to keep his grades above the required level. Father requested Zachary's total emancipation. The trial court held a hearing on September 24, 1999, and took the issues under advisement. On June 13, 2000, the trial court entered an Order stating that Zachary was not emancipated for college expenses. However, the trial court ordered that Father would not have to pay any further child support because Zachary was over the age of twenty-one.[10]

Although Zachary was not emancipated in regard to educational expenses as a category, the trial court erred in determining that Father owed any arrearage for Zachary's Spring 2000 semester. Going back to the September 24, 1997, Order, the trial court ordered that Father be responsible for a portion of Zachary's educational expenses provided Zachary maintain a "C" average, remain a full-time student and report his grades to Father. Because Zachary's grades dropped below a "C" average, we believe that Father should not have been responsible for Zachary's grades until they again rose to at least a "C" average.

Father contended in his Petition to Emancipate Child and Modify Support that the trial court should have emancipated Zachary because Zachary failed to establish an appropriate aptitude for postsecondary educational endeavors such that his parents should not be required to contribute to the costs of education. In its February 7, 2001, Order, the trial court stated that Father and Mother had stipulated that Zachary was not to be totally emancipated and that Father would still be responsible for Zachary's college expenses. However, Father should not have been required to contribute to Zachary's educational expenses for any semester immediately following a semester where Zachary's cumulative grade point average was below a "C" average.[11]

This is similar to our decision in *Gilbert v. Gilbert*, 777 N.E.2d 785 (Ind.Ct.App. 2002). In *Gilbert*, we examined a situation where a child had not accumulated sufficient hours as compared to other students who had been in school for the same amount of time. Additionally, his grade

---

**10.** On May 12, 2000, Father filed a Petition to (Temporarily) Modify Child Support as he had been injured at work and was on disability. In its June 13, 2000, Order, the trial court took the issue of reduced support under advisement.

**11.** Because college expenses are typically paid at the beginning of each semester, it is not feasible to require that Father be reimbursed for any semester where Zachary's grades were below a "C" average. To do so would put unnecessary pressure on a child to achieve. Therefore, it is more feasible to state that Father would be relieved of his duty to contribute to Zachary's educational expenses for a semester following a semester where Zachary's grades dropped below a "C" average.

point average was a 2.11 after two years of college. At the time of our decision, his most recent semester had ended with a 1.1 semester grade point average. As in this case, the trial court had ordered that the child's father be responsible for his educational expenses only if the child maintained a 2.0 grade point average. We stated:

> Although Brian has clearly struggled academically through college, we believe the trial court's October 16, 2001, order provides sufficient parameters to assure Father that he will only be required to pay for a child who continues to maintain an appropriate aptitude for post-secondary education. Because the October 16, 2001, order contains specific parameters that clearly reflect consideration of Brian's aptitude for post-secondary education, we decline to find that the trial court's decision is clearly erroneous.

*Id.* at 793.

As this is a case of first impression in Indiana, we have attempted to find cases from other jurisdictions for guidance. In *Limpert v. Limpert*, 119 N.J.Super. 438, 292 A.2d 38 (A.D. 1972), the New Jersey Superior Court ordered a father to continue paying for his son's undergraduate work despite the son's dubious scholastic ability and lackadaisical determination. Noting that the trend in New Jersey was to include college education costs as part of child support where the child showed scholastic aptitude and the parents are able to afford it and noting that the son had made some scholastic improvement after his first year at a junior college, the court ordered the father to continue making the payments of $27.50 a week for his son's college work. *Id.* at 39–40.

On the other hand, in *Bearden v. Bearden*, 272 S.C. 378, 252 S.E.2d 128 (S.C. 1979), the South Carolina Supreme Court stated that a child's obligation to apply himself to his college education is concomitant with the parent's obligation to pay for such education. In *Bearden*, the court noted that a normal course load for a student at Clemson University at the time would have been sixty semester hours and the son in question had attempted only thirty-one hours and passed only twenty and had attained a below average grade point average. The court stated that the father in question had paid his son's college expenses until it was demonstrated that the son was not doing acceptable college level work. Therefore, the court held that the father had satisfied his obligation to the son and that the father was justified in refusing to spend any additional money on his son's college expenses. *Id.* at 131.

Here, Zachary performed very well in his first year of post-secondary education at Ivy Tech. After transferring to Ball State University, Zachary performed poorly in his first year. Although Father has argued in his petitions that such poor performance is sufficient grounds to emancipate Zachary fully and to relieve Father of any contribution to Zachary's educational expenses, we disagree. We believe that such a harsh result is contrary to the purposes of the educational expenses provisions of section 31–16–6–2. To completely cut off a child following a bad semester or a bad year is unnecessarily harsh;[12] however, to require that a parent fund an

---

12. We note that this is true in cases such as Zachary's where he graduated from college in May 2002. To have cut off his educational expenses after one or two bad semesters may have made it impossible for him to graduate. Rather, we find that it is more appropriate to give the child the chance to bring his grades up, but to not require the parent to contribute following any semester where the child's grades did not meet the level established by the trial court.

education for a child that is not showing proper aptitude for post-secondary education is also unnecessarily harsh and completely strips the requirement of maintaining a "C" average of all meaning. *See McKay v. McKay,* 644 N.E.2d 164, 166 (Ind.Ct.App.1994) (quoting *Milne v. Milne,* 383 Pa.Super. 177, 556 A.2d 854, 859 (1989)) ("The objective of the court [in] extending its protection to adult children of divorced parents is to ensure that they are not unjustly—and that is the key word—deprived of opportunities they would otherwise have had, had their parents not divorced.").

■ Therefore, we hold that an appropriate balance is for Father to be required to pay for any semester immediately following a semester where Zachary achieved a minimum of a 2.0 cumulative grade point average.[13] Thus, Father should not have been required to contribute to Zachary's educational expenses for the Spring 2000 semester and we remand to the trial court

for a new determination of Father's arrearages in light of this holding.

### 3. Fall 2000—Spring 2002

Following another petition by Father to modify child support based on Zachary's academic performance, the trial court issued an Order on February 7, 2001. Appellant's Appendix at 368–71. In its Order, the trial court noted that the parties had stipulated that Zachary was not to be totally emancipated because of his need for health insurance. *Id.* at 369. Additionally, the trial court reduced Father's contribution to Zachary's educational expenses as of May 12, 2000, due to Father's reduced income caused by his injury. *Id.* at 371.[14]

Regarding the remainder of Zachary's education at Ball State University, the trial court's November 15, 2002, Order stated:

E. 2000 Fall semester (August to December, 2000) [Father] on disability as of 4–17–00, ordered to pay 44% of $3,648.10 college and — $1,605.16 other expenses ($660.00 × 6 mo. × 44%) — $1,742.40

F. 2001 Spring semester (January to May, 2001) [Father] on disability April 4, 2001, fees & expenses were incurred in January of 2001, [Father] ordered to pay 44% of $2,118.00 college and — $931.92 other expenses ($660.00 × 5 mo. × 44%) — $1,452.00

G. 2001 Summer school (May to July, 2001) [Father] ordered to pay 82% of $5,460.00 college and — $4,624.80 other expenses ($660.00 × 3 mo. × 82%) — $1,623.60

H. 2001 Fall semester (August to December, 2001) [Father] off disability until 12–16–01, [Father] ordered to pay 82% of $3,578.37 college and — $2,934.26 other expenses ($660.00 × 4 mo. × 82%) — $2,164.80 [15]

13. Therefore, if, for example, a new freshman performs poorly in his first semester, he is not cut off from financial support from his noncustodial parent for his entire college career. Rather, he is cut off until he raises his grades to the level required by the trial court's order. Once his grades again meet this standard, the non-custodial parent will be required to begin paying again in the following semester. If, however, he continues to perform poorly throughout his entire college career, his noncustodial parent has only been required to help pay for the first semester of his college.

14. Additionally, the Order required Father to be responsible for $2,462.00 for Zachary's Fall 1999 semester. The trial court erred in requiring that Father contribute to Zachary's Fall 1999 semester because Zachary was not in school for that semester. However, this error was corrected in the November 15, 2002, Order.

15. The trial court did not require Father to pay any educational expenses following the

*Id.* at 457.[16] We remand to the trial court to determine the proper calculations for these semesters, keeping in mind that Father should not be required to contribute to any semester following a semester where Zachary achieved below a "C" average and that the other expenses need to be recalculated, eliminating any expenses which are properly considered support payments after June 29, 1999, as discussed above in section III.A.

Additionally, we note that the trial court did not make a proper finding regarding Zachary's duty to provide his grades to Father. Even though Mother contends that she and Zachary could not reach Father via telephone or e-mail, Mother and Zachary could have submitted Zachary's grades to Father's attorney. Therefore, we remand for a proper finding on when Zachary's grades were submitted to Father and whether such submissions were made in time to comply with the requirements of the September 24, 1997, Order. If the submissions were not made in time, that could affect the calculations of Father's arrearages as he should not be required to pay for any semester where Zachary failed to meet the requirements of the September 24, 1997, Order.

We retain jurisdiction over this case and will resume consideration of the merits of the appeal after the trial court makes a new determination regarding Father's obligations for Zachary's educational expenses.

### Conclusion

All arguments regarding the procedure used by the trial court regarding the submission of affidavits rather than conducting a hearing with the presentation of evidence have been waived on appeal because the parties did not raise the issues prior to the trial court's judgment. Additionally, the issue of arrearages was properly before the trial court because Father raised the issue of modification of support. However, the trial court erred in including expenses which are properly considered support under the category of educational expenses. Additionally, the trial court erred in requiring Father to contribute to Zachary's educational expenses when Zachary's educational achievement did not meet the conditions set by prior Orders. Therefore, we remand to the trial court for a new determination of Father's arrearage regarding Zachary's educational expenses, but we retain jurisdiction.

Remanded.

VAIDIK, J., concurs.

FRIEDLANDER, J., concurs and dissents.

FRIEDLANDER, Judge, concurring and dissenting.

I agree with the majority that the trial court erred in ordering Father to pay expenses incurred after June 29, 1999, that are properly designated as support payments. I also agree in general with the majority's determination that the trial court erred in ordering Father to contribute to all of Zachary's educational expenses, in light of Zachary's periodic poor academic performance in college. I respectfully disagree, however, with the majority's conclusions on the question of which semesters Father is responsible to fund.

Fall 2001 semester because it determined that Zachary was to be emancipated as of November 13, 2001.

16. Zachary graduated from college in May 2002.

The majority concludes that Father should not have to contribute for the semesters *following* a semester in which Zachary did not meet the required minimum grade point average, as determined by the dissolution court in the divorce decree. I believe that it is at odds with the order providing that Father and Mother should divide equally Zachary's tuition and book expenses so long as he maintains a "C" average. I believe the best interpretation of the support order is that Father is not financially responsible for semesters in which Zachary does less than "C" work. This necessarily means that the determination as to whether Father has to contribute will be made at the conclusion of the semester when Zachary's grades are posted. Inasmuch as college expenses are paid at the beginning of a semester, such would require something in the nature of reimbursement from Zachary to Father, if Zachary's performance did not fulfill the requirement concerning his GPA. The majority concludes that such is not feasible because it would place "unnecessary pressure on a child to achieve." *Op.* at 233 n. 11. I assume that the majority uses the term "unnecessary" in this context not in the sense of "unwarranted," but of "overly" or "excessive." Clearly, such accountability places pressure on Zachary and others similarly situated, but I think it is overstating it to characterize it as "unnecessary pressure."

I begin by observing that, at present, there are no laws, state or federal, that generally require parents to pay for the children's college education. With one exception, such is a matter of the parent's prerogative. That exception applies here, and occurs with respect to child support in the context of dissolution of marriage. Ind.Code Ann. § 31–16–6–2(a) (West 1998) provides that a "child support order or an educational support order may also include, where appropriate ... (1) amounts for the child's education ... at institutions of higher learning[.]" Thus, but for the break-up of his parent's marriage, the question of whether Father and Mother would fund Zachary's college education would be left entirely to his parents' wishes. Had there been no divorce, Father and Mother might well have cut off funding for his college endeavors after the first or second bad semester. He would then have been in a position in which many others find themselves, viz., having to put himself through college.

I share the foregoing observations to lend some perspective to my point that we should not begin our analysis with the assumption that relying entirely on one's own resources, including student loans and working one's way through college, is an unacceptable situation that is to be avoided when fashioning support orders. It seems to me that this view is implicit in portions of the majority opinion. For instance, the majority states, "To completely cut off a child following a bad semester or a bad year is unnecessarily harsh[.]" *Op.* at 234–235. Elsewhere, and even more problematically, the majority states, "To have cut off his educational expenses after one or two bad semesters may have made it impossible for him to graduate." *Id.* at n. 13. Refusal to subsidize poor effort or performance, or both, does not strike me as harsh, much less unnecessarily so. Certainly, a lack of monetary contribution by parents does not render the attainment of a college education an impossible task. That said, the dissolution court in the instant case, *did* have the statutory authority to fashion an order requiring Mother and Father to contribute to Zachary's college education, and the court exercised that power.

The order called for Father to pay a share of Zachary's college expenses provided that he maintain a "C" average. That order could arguably be interpreted in several ways, but I have no quarrel with the one adopted by the dissolution court here, i.e., that Father need not contribute for a semester in which Zachary's GPA was below a "C." In my view, taken literally, such would include any semester in which poor grades *from that* semester lowered the GPA below the threshold. Moreover, if the next semester's performance raised the GPA above the threshold, then Father should contribute for *that* semester, notwithstanding that his obligation to do so would not be determined until the grades were posted and the semester completed. The majority addresses the practical difficulties inherent in that system, and attempts to resolve them by, in effect, injecting what amounts to a one-semester delay into the formula. In my view, the majority thereby alters the support order it seeks to construe and implement.

That alteration is not without consequences. The total cost for tuition and fees changes from one semester to the next, though perhaps not dramatically so. Still, the fact that semesters are not interchangeable in that respect counsels against the sort of approach adopted by the majority in this case. Accounting difficulties may arise from strict adherence to the original support order, but from Zachary's perspective that is just another unpleasant consequence of a sub-par academic performance.

In summary, I would impose the terms of the original order exactly as written, and would not add to its terms a one-semester delay. The majority's addition of that term to the order is not justified, whether it is motivated by a desire to avoid accounting difficulties, or by what I considered to be the mistaken view that ordering an under-performing student to pay his own way through college is too harsh to contemplate, and that such could render the attainment of a degree impossible. The dissolution court is certainly capable of performing the necessary calculations to determine the amount Father owes under my interpretation of the terms of the order to pay college expenses. I would remand with instructions that it do so. In all other respects, I agree with the majority.