**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**KATHLEEN M. SWEENEY**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**SCOTT P. WYATT**
**MATTHEW T. LEES**
Campbell Kyle Proffitt LLP
Carmel, Indiana

FILED

Apr 23 2013, 9:27 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN RE THE PATERNITY OF A.H., A.E., A.M., A.I., A.N.: | ) | |
| | ) | |
| A.G., | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1208-JP-668 |
| | ) | |
| A.H., | ) | |
| | ) | |
| Appellee. | ) | |
| | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable David Shaheed, Judge
Cause No. 49D01-0005-JP-709

**April 23, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

Mother and Father have five children together. This case involves modification of child support regarding the first three children born to the couple and a paternity action for two subsequently born children. On appeal, Mother presents the following restated issue for review: Did the trial court abuse its discretion when calculating Father's weekly child support obligation since July 2007?

We affirm.[1]

Mother and Father's first three children were born in 1996 and 1998 (twins). In 2000, the parties filed petitions to establish paternity. Father stipulated to paternity and by order dated June 5, 2000 Father's child support was set at $150 per week.

Mother and Father had another child together in November 2006 and another in December 2009. Although the record is not entirely clear on the point, the parties appear to agree that Mother filed a petition to establish paternity of their fourth child on or about July 27, 2007.[2] This was followed, in July 2009, with Mother's petition for modification of child support, in which she referenced the fourth child and indicated she was pregnant with the couple's fifth child. Thereafter, on December 23, 2010, Mother filed a petition for a hearing

---

[1] We remind Mother that argument is improper in the statement of case and statement of facts sections of an appellant's brief. *See Kirchoff v. Selby*, 703 N.E.2d 644, 656 (Ind. 1998) (facts should be presented in "an objective and nonargumentative manner"). *See generally* Ind. Appellate Rule 46(A)(5) and (6). Moreover, App. R. 46(A)(6)(b) requires that the facts be "stated in accordance with the standard of review appropriate to the judgment or order being appealed." Although Mother has not complied fully with these rules, we exercise our discretion to reach the merits of her appeal.

[2] Many of the relevant filings are not included in the record before us, and the CCS provided on appeal begins with July 27, 2009. Aside from general references at the evidentiary hearing and in hearing submissions, we have no indication of the procedural history of this case between June 2000 and July 2009. The parties' appellate briefs do not further enlighten us. The date of July 27, 2007, however, was clearly relevant to the parties and the trial court. Therefore, we will assume for purposes of this appeal that Mother filed a petition on this date.

2

to establish paternity and support.

On March 15, 2012, the trial court held a final hearing on all pending paternity and support issues. At the beginning of the hearing, Father stipulated to paternity of the two youngest children. In addition to Father and Mother, Father's accountant, Joseph Sullivan, testified at the hearing. The primary focus of the hearing regarded Father's income since the time he became self-employed in 2007. At the close of the hearing, the trial court permitted Mother and Father to make post-hearing submissions. The court held a brief hearing regarding these submissions on June 11, 2012. Neither party requested that the trial court issue specific findings and conclusions.

On July 20, 2012, the trial court issued its order regarding paternity and child support. The court noted the parties' stipulation that Father's support obligation from June 5, 2000 through July 27, 2007 totaled $55,800 and that, as of June 11, 2012, Father had paid $71,220 toward his child support obligation. With respect to the period after July 27, 2007, the court concluded that Father's past support obligation totaled $51,114.08, which resulted in an amount due of $35,694.08. Accordingly, the court ordered Father to start paying $277 per week plus $70 per week toward the arrearage for a total of $347 per week. Mother now appeals, claiming that the trial court abused its discretion in determining Father's past and present support obligation. Additional facts will be provided below as necessary.

A trial court's calculation of child support is presumptively valid, and we will reverse a trial court's decision in this context only if it is clearly erroneous or contrary to law. *Young v. Young*, 891 N.E.2d 1045 (Ind. 2008). "A decision is clearly erroneous if it is clearly

3

against the logic and effect of the facts and circumstances that were before the trial court." *Id*. at 1047.  On review, we will not reweigh evidence and will consider only the evidence most favorable to the judgment.  *Saalfrank v. Saalfrank*, 899 N.E.2d 671 (Ind. Ct. App. 2008).

As set forth above, Father's income was at issue for the years 2007 to 2012.  In 2007, Father started his own construction business, Acorn Plus Realty Contracting.  Father accepts work in a several states (including Kentucky, Indiana, Missouri, Idaho, Iowa, and Illinois), generally repairing and remodeling homes owned by various banks and insurance companies. The bank or insurance company prepares a "scope" for each property, which details the nature of the work, expected cost of repair, and estimated profit and overhead for the contractor.  The contractor's proposed profit is generally set around 10% of the expected costs.  Thus, when Father takes on a job, he is paid a set amount determined by the bank or insurance company.  From that gross income, Father is responsible for paying all expenses associated with the job, including transportation, lodging, building materials, construction fees, labor costs, and other overhead.  Father makes a profit only if he completes the job for less than the amount paid by the bank or insurance company.  In other words, even though the expected profit is often set in the scope at 10%, Father does not necessarily achieve this level of profit.

At the evidentiary hearing, Father provided his IRS tax returns for 2007 through 2010 and financial declarations for 2011 and 2012, for which tax returns had yet to be filed.  These documents indicated gross receipts and total income as follows:

|  | 2007 | 2008 | 2009 | 2010 | 2011 | 2012 |
|---|---|---|---|---|---|---|
| Gross Receipts | $95,734 | $329,584 | $519,536 | $573,790 | Over $500,000 | Over $500,000 |
| Total Income | $8505 | $17,540 | $27,410 | $31,465 | $29,640 | $31,465 |

Although Father acknowledged he did not keep good records, he testified that his 2008 through 2010 tax documents were prepared by an accountant, with whom he had meetings and provided some documents, and that to the best of his knowledge his income was accurately reported. Father's accountant also testified at the hearing and opined that Father's margins were similar to others engaged in the same line of work.

At the hearing, Mother did not present expert testimony to refute the tax documents introduced by Father or propose a method for more accurately determining Father's income during the years in question. Rather, Mother generally attacked Father's lack of documents in support of his claimed expenses, and she testified that it is simply not "fair" that Father can claim so little income when his gross annual receipts have totaled over $500,000. *Transcript* at 159. She also presented evidence that Father's lifestyle suggested he made substantially more than he was reporting to the IRS. For example, Father and his current wife contributed $500 to the campaign of Obama for President in 2008, he drives a Cadillac Escalade and a Yamaha motorcycle, and he has paid $100 per month for special seating at a night club.[3]

In her post-hearing submissions, Mother filed proposed support and arrearage calculations, which included several child support worksheets for each year. Mother

---

[3] Father explained that he shares the expense for the special seating with several other individuals and he testified that the Escalade was purchased at a salvage lot and that he has had the motorcycle for ten years.

explained:

> Due to the wide discrepancy between claimed taxable income and gross business income, and in light of [Father's] inability to account for the significant deductions made to gross business income for each year, *reasonable* "gross income" figures for support purposes have been suggested for each year, for the Court's determination.

*Appellant's Appendix* at 261 (emphasis supplied). For example, Mother proposed calculations for 2007 based on Father's income being: A.) minimum wage; B.) his entire reported gross business income; C.) $40,000; and D.) $50,000. For 2010, Mother proposed calculations based on Father's income being as high as $300,000, or even his entire gross business income of $573,790.

With respect to Father's income during the disputed time period, the trial court's order provided in relevant part:

> If a court finds a parent is voluntarily underemployed without just cause, child support shall be calculated based on a determination for potential income. The Court may also consider self-employment affords a parent the opportunity to receive certain benefits from business operations not available to wage earners. If the underemployment results in unreasonably low income, the Court may impute income that at least conforms to the federal minimum wage.
> The Court finds [Father's] income for 2007 is unreasonably low considering his line of work, work experience and lifestyle choices and finds that his weekly income should at least reflect the federal minimum wage, effective July 2007 or $234.00 per week. Beyond this imputed income, the Court has no basis to recalculate his reported income for 2008-2012.

*Id*. at 39. The trial court, therefore, established Father's child support obligation for 2007 based upon the federal minimum wage and for 2008 through 2012 based upon Father's tax returns and financial declarations.

On appeal, Mother claims that the trial court failed to apply Indiana Child Support

6

Guideline 3(A)(2), which addresses self-employment for purposes of determining gross income.[4] With respect to 2007, Mother argues that the court applied the wrong guideline and improperly imputed income "despite gross receipts of over $95,000." *Appellant's Brief* at 8. For the remaining years, Mother asserts the court "incorrectly accepted [Father's] numbers at face value and did not carefully scrutinize the claimed deductions as required by the Indiana Child Support Guidelines." *Id.* at 9.

We turn first to the trial court's income determination for 2007. It is not entirely clear whether the trial court found Father to be voluntarily underemployed or whether the court felt that Father underreported his income from self-employment that year. In fact, it appears that the trial court might have conflated the two theories.[5] Regardless, we find that any error in

---

[4] This Guideline 3(A)(2) provides:

*Self-Employment, Business Expenses, In-Kind Payments and Related Issues.* Weekly Gross Income from self-employment, operation of a business, rent, and royalties is defined as gross receipts minus ordinary and necessary expenses. In general, these types of income and expenses from self-employment or operation of a business should be carefully reviewed to restrict the deductions to reasonable out-of-pocket expenditures necessary to produce income. These expenditures may include a reasonable yearly deduction for necessary capital expenditures. Weekly Gross Income from self-employment may differ from a determination of business income for tax purposes.

Expense reimbursements or in-kind payments received by a parent in the course of employment, self-employment, or operation of a business should be counted as income if they are significant and reduce personal living expenses. Such payments might include a company car, free housing, or reimbursed meals.

The self-employed shall be permitted to deduct that portion of their FICA tax payment that exceeds the FICA tax that would be paid by an employee earning the same Weekly Gross Income.

[5] Imputing income is often associated with voluntary underemployment, which does not seem applicable in the instant case. *See Trabucco v. Trabucco*, 944 N.E.2d 544, 550 (Ind. Ct. App. 2011) (where a parent is "underemployed for a legitimate purpose other than avoiding child support, there are no grounds for imputing potential income"), *trans. denied.* A trial court, however, "enjoys wide discretion in imputing income to the child support obligor to ensure that he does not evade his support". *Glover v. Torrence*, 723 N.E.2d 924, 936 (Ind. Ct. App. 2000). For example, the court may impute income where the obligor under represents his income and there exists a large discrepancy between reported income and expenses. *See Glover v. Torrence*, 723 N.E.2d 924.

this regard was invited by Mother, as she suggested calculating Father's income for 2007 using the federal minimum wage. In fact, she expressly indicated in her proposed support and arrearage calculations that that this was one of several "reasonable 'gross income' figures" the court could use, and she provided a proposed worksheet using this figure. *Appellant's Appendix* at 261. As such, Mother invited the error about which she now complains. *See Reinhart v. Reinhart,* 938 N.E.2d 788, 791 (Ind. Ct. App. 2010) ("[u]nder the invited error doctrine, a party may not take advantage of an error that he commits, invites, or which is the natural consequence of his own neglect or misconduct").

With respect to the years 2008 to 2012, Mother's argument is that the trial court failed to carefully review Father's reported expenses for each year. In this regard, she observes that Father's business has had gross profits of over $500,000 since 2009 and yet his net profits are only around $30,000 for each of these years due to extensive deductions. Further, Mother claims that Father provided no documentation at trial to support his reported expenses.[6]

We find disingenuous Mother's contention that the trial court failed to appropriately scrutinize the expenses listed on Father's tax returns. Mother expended virtually no effort (below or on appeal) analyzing Father's expenses. Moreover, the income figures Mother proposed to the trial court had little to no basis in the record, as she essentially picked income figures out of the air. *See Hamiter v. Torrence*, 717 N.E.2d 1249, 1252 (Ind. Ct. App. 1999)

---

[6] Mother also claims in passing that Father failed to "submit any supporting evidence that he received little or no income from his rental properties." *Appellant's Brief* at 12. The evidence presented regarding Father's rental income was meager, as well as disputed by Father, and Mother's bald assertion on appeal that Father carried no mortgages on the homes he owned is not supported by the evidence. Mother has wholly failed to establish error in this regard.

8

("[e]ach party bears the burden of justifying the incomes used in his or her own worksheet").

Mother's suggestion that Father presented no evidence to support his proposed income figures is not supported by the record. In addition to his own testimony, Father submitted tax returns, called his accountant as a witness, and submitted into evidence a substantial number of scopes from various jobs over the relevant time period. These scopes documented Father's potential income from each job, which was generally around 10% of the fees he collected. Further, Father testified that the margin provided in the scopes was not always achieved. The evidence presented by Father clearly established that in his line of work net profits were expected to be a relatively small percentage of gross income.

Although we understand that Mother's hands were tied to some extent by the lack of documentation regarding Father's reported expenses, Mother made no effort to justify the income figures used in her proposed worksheets and provided the trial court with no reasonable direction on how to recalculate Father's income for 2008 to 2012.[7] Moreover, the income figures used by the trial court were, in fact, within the broad range of income figures suggested by Mother for each year in her proposed support and arrearage calculations and accompanying worksheets. Accordingly, we find no error.

Judgment affirmed.

ROBB, C.J., and CRONE, J., concur.

---

[7] For example, in light of the scopes and Father's lack of expense documentation, Mother could have made a reasonable argument to the trial court that Father's income should be set at 10% of his yearly gross receipts. This would have had some basis in the evidence.

9